

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAY 15 2018

ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

HOPE EVANGULANE THOMLEY,
HOWARD RANDALL THOMLEY,
GLENN DOYLE BEACH, JR., and
GREGORY GRAFTON PARKER

CRIMINAL NO. 2:18CR18-KS-MTP

18 U.S.C. § 1349
18 U.S.C. § 1347
21 U.S.C. § 846
21 U.S.C. § 841
18 U.S.C. § 371
42 U.S.C. § 1320a-7b
18 U.S.C. § 1001
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)

**The Grand Jury Charges:**

At all times relevant to this Indictment:

**GENERAL ALLEGTIONS**

**Introduction and Background**

1.      As detailed herein, approximately between 2012 and 2015, **HOPE EVANGULANE**
**THOMLEY ("HOPE THOMLEY"), HOWARD RANDALL THOMLEY ("RANDY**
**THOMLEY"), GLENN DOYLE BEACH, JR. ("BEACH"), and GREGORY GRAFTON**
**PARKER ("PARKER")** (collectively, "defendants") conspired to and engaged in a scheme to
defraud health care insurance companies of more than $200 million by fraudulently formulating,
marketing, prescribing, and billing for compounded medications produced and dispensed by
pharmacies located in the Southern District of Mississippi. Additionally, during the same
timeframe, the defendants also conspired to and engaged in a scheme to pay and receive health
care kickbacks and bribes as well as to launder monetary instruments for the purpose of concealing
the fraudulently obtained proceeds.

## Pharmacies and Compounding

2.      Advantage Pharmacy, LLC, d/b/a Advantage Medical and Pharmacy ("Advantage Pharmacy"), formed in 2008 and located in Lamar County, Mississippi, was initially an open door, retail pharmacy. In or around 2012, Advantage Pharmacy shifted its business focus to the production of compounded medication.

3.      Advantage Medical Infusion, LLC, d/b/a AMI Rx, ("Advantage Medical Infusion") was formed in 2008 and located in Lamar County, Mississippi. In or around late 2013 and early 2014, Advantage Medical Infusion shifted its business focus to the production of compounded medication.

4.      Section 505 of the Food, Drug, and Cosmetic Act ("Act") required drug manufacturers and producers to receive approval by the United States Food and Drug Administration ("FDA") before introducing new drugs into interstate commerce.

5.      Section 502 of the Act exempted compounded medications from receiving FDA approval if the compounded medication was compounded by a licensed pharmacist, or other licensed professional, for an identified individual, based on the unsolicited receipt of a valid prescription, and that was medically necessary for the identified individual.

6.      In other words, to be exempt from FDA approval, compounded medications were drugs that were combined, mixed, or altered by licensed pharmacists or other licensed practitioners, pursuant to valid prescriptions issued by licensed medical professionals, including physicians and nurse practitioners ("prescribers"), to meet the specific needs of individual patients.

7.      Prescribers could prescribe compounded medications to patients upon considering patients' diagnoses, medical conditions, health factors, and reactions to other medications. Although ingredients in compounded medications are generally approved by the FDA, the

2

compounded form of those medications are not. There are risks associated with prescribing drugs that do not meet federal quality standards, so compounded medications are meant to be prescribed when the needs of a patient cannot be met by an FDA-approved medication.

### Health Care Benefit Programs and Claims Adjudication

8.      TRICARE, administered by the United States Department of Defense, provided health care benefits for United States military personnel and their families.

9.      In addition, various private insurance companies such as Blue Cross Blue Shield and its state-based affiliates provided health care benefits for individuals enrolled with their plans.

10.     TRICARE and these private insurance companies are each a health care benefit program within the meaning of Title 18, United States Code, Section 24(b).

11.     Individuals who qualified for TRICARE benefits or the benefits of other health care benefit programs were commonly referred to as "beneficiaries."

12.     Medical service providers, including hospitals, clinics, physicians, nurse practitioners, and pharmacies ("service providers"), meeting certain criteria, could enroll with health care benefit programs, including TRICARE, and provide medical services to health care benefit program beneficiaries. The service providers would then submit claims, either electronically or in hard copy, to health care benefit programs seeking reimbursement for the cost of items and services provided.

13.     TRICARE and the other health care benefit programs provided prescription drug coverage, including prescriptions for compounded medications, to eligible beneficiaries through its pharmacy program or similar drug plans.

14.     TRICARE's pharmacy program and other health care benefit programs' drug plans were administered by Pharmacy Benefit Managers ("PBMs"), whose responsibilities included

3

adjudicating and processing payment for prescription drug claims submitted by eligible pharmacies. PBMs also audited participating pharmacies to ensure compliance with its rules and regulations.

15.     Specifically, TRICARE's PBM was known as Express Scripts.

16.     Advantage Pharmacy and Advantage Medical Infusion entered into contractual relationships with PBMs, directly and indirectly, and in so doing, agreed to comply with all applicable laws, rules, and regulations, including all applicable federal and state anti-kickback laws.

17.     For prescription drugs, including compounded medications, to be reimbursed, health care benefit programs required that prescription drugs, including compounded medications, were dispensed pursuant to valid prescriptions and were medically necessary for the treatment of covered illnesses. In other words, health care benefit programs would not reimburse prescription drugs, including compounded medications that were not medically necessary or dispensed without a valid prescriptions.

18.     Most, if not all, PBMs, including Express Scripts, required participating pharmacies to collect and make good faith efforts to collect copayments from beneficiaries at the time of billing, and specified that copayments could not be systematically waived or reduced. Consistent copayment collection was a fraud prevention measure, as copayments gave beneficiaries financial incentives to reject medications that were not medically necessary or had little to no value to beneficiaries' treatments.

19.     Upon receiving prescriptions, Advantage Pharmacy and Advantage Medical Infusion submitted claims for prescription drugs to health care benefit programs or PBMs.  Health care benefit programs or PBMs reimbursed pharmacies at specified rates, minus any copayments to be

paid by beneficiaries. Specifically, between 2012 and 2015, health care benefit providers permitted compounding pharmacies to submit claims and be reimbursed for each individual ingredient included in a compounded medication.

20.    Claims submitted by Advantage Pharmacy and Advantage Medical Infusion to PBMs traveled via interstate wire or interstate mail to be adjudicated. For example, regardless of where service providers provided pharmacy benefits, Express Scripts adjudicated claims submitted electronically in Piscataway, New Jersey, and claims submitted in hardcopy in Lexington, Kentucky.

## Defendants and Related Persons and Entities

21.    Total Care Marketing, LLC ("Total Care Marketing") was formed in 2012 and located in Lamar County, Mississippi.

22.    United Business Ventures, LLC ("UBV") was formed in 2011 and located in Lamar County, Mississippi.

23.    BNSMTW, LLC ("BNSMTW"), was formed in 2015 and located in Lamar County, Mississippi.

24.    Marketing Company 1 was formed in 2012 and located in Lamar County, Mississippi.

25.    Advantage Marketing Professionals, LLC ("Advantage Marketing Professionals") was formed in 2013 and located in Lamar County, Mississippi.

26.    Thomley Christmas Tree Farm, LLC ("Thomley Tree Farm") was formed in 2013 and located in Lamar County, Mississippi.

27.    TLC RX, LLC ("TLC RX") was formed in 2013 and located in Lamar County, Mississippi.

28.    Thomley Properties, LLC ("Thomley Properties") was formed in 2013 and located in

Lamar County, Mississippi.

29.     N & P Farms, LLC ("N&P Farms") was formed in 2014 and located in Lamar County, Mississippi.

30.     Bone Forest, LLC ("Bone Forest") was formed in 2014 and located in Lamar County, Mississippi.

31.     Intellectual Property Management Services, LLC ("IPMS") was formed in 2013 and located in Indiana.

32.     IPMS Holdings, Series B, LLC ("IPMS Series B") was formed in 2016 and located in Lamar County, Mississippi.

33.     IPMS Holdings, Series E, LLC ("IPMS Series E") was formed in 2016 and located in Lamar County, Mississippi.

34.     **HOPE EVANGULANE THOMLEY ("HOPE THOMLEY")** of Hattiesburg, Mississippi, was a founding member of Total Care Marketing. In addition, **HOPE THOMLEY** or companies she owned and controlled were members of Advantage Pharmacy, Marketing Company 1, UBV, Bone Forest, BNSMTW, IMPS Series B, Thomley Properties, and the Thomley Tree Farm.

35.     **HOWARD RANDALL THOMLEY ("RANDY THOMLEY")** of Hattiesburg, Mississippi, and companies that he owned and controlled were members of Advantage Marketing Professionals, UBV, Total Care Marketing, Thomley Properties, and the Thomley Tree Farm, and IPMS Series B.

36.     **GLENN DOYLE BEACH, JR. ("BEACH")**, of Sumrall, Mississippi, and companies that he owned and controlled were members of Advantage Pharmacy, Total Care Marketing, BNSMTW, TLC RX, N&P Farms, Bone Forest, and IPMS Series E.

37.   **GREGORY GRAFTON PARKER ("PARKER")**, of Laurel, Mississippi, was a licensed nurse practitioner in the state of Mississippi, and had the ability to prescribe medications to patients. **PARKER** was a member of Marketing Company 1.

38.   Albert Luis Diaz, M.D., ("Diaz"), of Biloxi, Mississippi, was a physician licensed to practice medicine in Mississippi, and had the ability to prescribe medications to patients.

39.   Brantley Paul Nichols, D.M.D. ("Nichols") of Hattiesburg, Mississippi, was an oral surgeon licensed to practice dentistry in Mississippi, and had the ability to prescribe medications to patients. Nichols was a member of Marketing Company 1.

40.   Jason Charles May ("May"), of Hattiesburg, Mississippi, was a pharmacist licensed to dispense pharmaceuticals in the state of Mississippi. May was the Pharmacist-in-Charge ("PIC") of Advantage Pharmacy. May and companies he owned and controlled were members of Advantage Pharmacy and BNSMTW.

41.   Gerald "Jay" Schaar ("Schaar"), of Gulfport, Mississippi, was a marketer of Advantage Pharmacy's compounded medications.

42.   Co-Conspirator 1, of Hattiesburg, Mississippi, and companies he owned and controlled were members of Advantage Pharmacy, Total Care Marketing, Marketing Company 1, and BNSMTW.

**Relevant Financial Institutions**

43.   The First, a National Banking Association, was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. The First was headquartered in Hattiesburg, Mississippi, and maintained branch locations throughout the Southern District of Mississippi, including Lamar County, Mississippi. Between at least March 28, 2011 and January 21, 2016, UBV held accounts

7

at The First, including but not limited to account No. 2685. Between at least April 24, 2013 and January 21, 2016, Thomley Tree Farm held accounts at The First, including but not limited to account No. 1316.

44.     Wells Fargo Bank was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Wells Fargo Bank was headquartered in Sioux Falls, South Dakota and maintained branch locations throughout the Southern District of Mississippi, including Lamar County, Mississippi. Between at least December 27, 2013 and January 21, 2016, IPMS held accounts at Wells Fargo Bank, including but not limited to account No. 6960.

45.     Regions Bank was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Regions Bank was headquartered in Birmingham, Alabama and maintained branch locations throughout the Southern District of Mississippi, including Lamar County, Mississippi. Between at least May 24, 2013 and January 21, 2016, TLC RX held accounts at Regions Bank, including but not limited to account No. 8585.

## COUNT 1

### The Conspiracy and Its Object

46.     Paragraphs 1 through 45 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

47.     Beginning in or around April of 2012, and continuing through in or around January of 2016, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY,**
**HOWARD RANDALL THOMLEY,**
**GLENN DOYLE BEACH, JR., and**
**GREGORY GRAFTON PARKER,**

8

did conspire and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

      a.    to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

      b.    to knowingly and willfully execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE and other health care benefit programs, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of TRICARE and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

48.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (b) submitting and causing the submission of claims to health care benefit programs based upon materially false and fraudulent pretenses, representations and promises; and (c) concealing the submission of false and fraudulent claims to health care benefit programs.

**Manner and Means**

49.     The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

Formulating and Producing High-Yield Compounded Medication

50.     **BEACH,** May, and their co-conspirators identified, promoted, and mass-produced formulations of compound medications that health care benefit programs, including TRICARE, would reimburse at particularly high rates ("High-Yield Compounded Medication"), regardless of the individual medical needs of the beneficiaries or the effectiveness of the High-Yield Compounded Medication. One ingredient included in the High-Yield Compounded Medication was ketamine, a Schedule III controlled substance.

51.     To determine potential adjudication amount for certain formulations, **BEACH** and his co-conspirators instructed May and others to run "test" or "dummy" claims with health care benefit programs in order to determine how much health care benefit programs would reimburse for the formulas. That is, Advantage Pharmacy or Advantage Medical Infusion personnel would submit a fake claim on behalf of a real patient—using that patient's actual personal identifying information—and then reverse it once the pharmacy learned how much the target health care benefit program would pay for the specific compound formula.

52.     In some circumstances, if the prescribed High-Yield Compounded Medication was not reimbursed by a beneficiary's health care benefit program, then **BEACH,** May, and their co-conspirators vary the ingredients and would provide the patient with a different High-Yield Compounded Medication that was covered, and bill the substitute formula instead.

53.     **BEACH,** May, and their co-conspirators mass-produced certain High-Yield Compounded Medication prior to receiving prescriptions and having individuals' medical needs

identified.

Marketing High-Yield Compounded Medication

54.    Advantage Pharmacy would not dispense and bill for High-Yield Compounded Medication without a prescription signed by an authorized prescriber. In the event of an audit by the health care benefit programs, these prescriptions would be used to evidence that the dispensed medications, including High-Yield Compounded Medication, were medically necessary.

55.    To ensure that prescribers prescribed the specific compounds that yielded high reimbursement, the defendants and their co-conspirators created pre-printed, check-the-box prescription forms that set forth the formulas for their High-Yield Compounded Medication.

56.    Additionally, Advantage Pharmacy owners, including **BEACH**, directed marketers to encourage prescribers to include and hand-write more ingredients than necessary in compounded medication for the purpose of increasing reimbursement rates, irrespective of the individuals' medical needs.

57.    The defendants and their co-conspirators were also paid kickbacks—a percentage of the revenue for prescriptions they obtained, which were covered by certain health care benefit programs, including TRICARE.

58.    In turn, the defendants devised a number of bribery and kickback schemes to provide remuneration to marketers and prescribers who prescribed High-Yield Compounded Medication, and to beneficiaries who accepted it.

Prescribing High-Yield Compounded Medication

59.    Prescribers, including **PARKER**, Nichols, and Diaz, wrote prescriptions for High-Yield Compounded Medication, regardless of whether it was medically necessary for the individual patients, often times, in exchange for kickbacks and bribes and without examining the patients.

11

60. For example, one High-Yield Compounded Medication was a purported "dietary supplement" comprised entirely of over-the-counter ingredients, for which Advantage Pharmacy billed health care benefit programs thousands of dollars per bottle. On or about May 16, 2014, **PARKER** – who was receiving remuneration for prescriptions he wrote – sent a text message to **HOPE THOMLEY** as follows: "If you want to thank me, get me rolling on dietary supplements. I need to make some cash, and I think I can burn through a lot of that stuff!"

61. Additionally, **RANDY THOMLEY** provided certain TRICARE beneficiaries' personal identifying information to Schaar, who then persuaded Diaz to prescribe High-Yield Compounded Medication to the TRICARE beneficiaries and their families, even though Diaz never examined the patients.

62. Moreover, at **HOPE THOMLEY**'s request, **PARKER** and Nichols signed blank, pre-printed prescription forms and gave them to **HOPE THOMLEY**, who filled in the pre-printed prescription forms identifying which High-Yield Compounded Medication these beneficiaries would receive, along with the number of refills.

### Billing for High-Yield Compounded Medication

63. Once in possession of a signed prescription, Advantage Pharmacy would dispense the High-Yield Medication and submit a claim to the beneficiary's respective health care benefit program. Several of Advantage Pharmacy's billing practices were designed to exploit and defraud health care benefit programs.

64. For example, Advantage Pharmacy engaged in fraudulent billing with respect to the collection of copayments. As a condition of health care benefit programs agreeing to reimburse claims submitted by Advantage Pharmacy, **BEACH**, on behalf of Advantage Pharmacy, directly and indirectly agreed to collect copayments from beneficiaries without reducing or waiving the

same.

65.     However, **BEACH, HOPE THOMLEY**, and their co-conspirators knew that actually collecting full copayments from patients would cause many of those patients to refuse the High-Yield Compounded Medication. Thus, **BEACH, HOPE THOMLEY**, and their co-conspirators devised a way for Advantage Pharmacy to waive and reduce the copayments for the beneficiaries, including TRICARE beneficiaries, while making it appear to health care benefit programs and PBMs that the copayments were being collected.

<u>Advantage Medical Infusion</u>

66.     In or around 2008, **BEACH** organized both Advantage Pharmacy and Advantage Medical Infusion as LLCs in the state of Mississippi.

67.     Due to poor audit performance and other issues, in or around 2013, Advantage Pharmacy was not permitted to fill prescriptions in certain states, and was terminated from its contracts with certain PBMs.

68.     To circumvent this exclusion, **BEACH, HOPE THOMLEY**, May, Co-Conspirator 1, and other members of Advantage Pharmacy used Advantage Medical Infusion and other pharmacies to dispense High-Yield Compounded Medication that Advantage Pharmacy was prohibited by law or contract from dispensing.

69.     However, **BEACH, HOPE THOMLEY**, May, and Co-Conspirator 1 continued to receive the vast majority of the revenue from Advantage Medical Infusion and other pharmacies, while concealing their ongoing interest in Advantage Medical Infusion and other pharmacies. For example, even though **BEACH** managed and retained control over Advantage Medical Infusion bank accounts, he represented to the Mississippi Secretary of State that he was "no longer a part of" Advantage Medical Infusion, and asked for his name to be removed from the Advantage

Medical Infusion annual report.

70.    The defendants, through Advantage Medical Infusion, engaged in many of the same fraudulent practices as Advantage Pharmacy, as set forth above.

Scope of the Scheme

71.    Together, Advantage Pharmacy and Advantage Medical Infusion fraudulently billed and received from health care benefit programs more than $200 million.

72.    The proceeds from the above-described fraud scheme were funneled through various bank accounts, but ultimately were distributed to, among others, **BEACH, HOPE THOMLEY, RANDY THOMLEY, PARKER**, Nichols, Schaar, Co-Conspirator 1, TRICARE beneficiaries recruited by **RANDY THOMLEY**, and other prescribers, marketers, pharmacy owners and beneficiaries.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-7

73.    Paragraphs 1 through 45 and 48 through 72 of the Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

74.    On or about the dates specified below, in Lamar County, in the Southern District of Mississippi, and elsewhere, for the purpose of executing the above-described scheme to defraud TRICARE and other health care benefit programs, and obtain money by materially false and fraudulent pretenses and representations, the defendants,

**HOPE EVANGULANE THOMLEY,**
**HOWARD RANDALL THOMLEY,**
**GLENN DOYLE BEACH, JR., and**
**GREGORY GRAFTON PARKER,**

14

aided and abetted by others known and unknown to the Grand Jury, in connection with the delivery

of and payment for health care benefits, items, and services, did knowingly and willfully execute,

and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting

commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE and other

health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program:

| Count | Beneficiary | Claim Description (Rx. Number) | Approx. Date Transmitted | Approx. Amount Paid | Defendants |
|-------|-------------|-------------------------------|--------------------------|---------------------|------------|
| 2 | S.M. | 107814 | 10/24/2013 | $10,257.87 | HOPE THOMLEY RANDY THOMLEY |
| 3 | D.M. | 107818 | 10/24/2013 | $10,274.87 | HOPE THOMLEY RANDY THOMLEY |
| 4 | C.B.B. | 114380 | 1/30/2014 | $3,906.68 | BEACH HOPE THOMLEY PARKER |
| 5 | G.B. | 114385 | 1/30/2014 | $3,906.68 | BEACH HOPE THOMLEY PARKER |
| 6 | A.J.H. | 114586 | 1/31/2014 | $2,510.19 | BEACH HOPE THOMLEY RANDY THOMLEY PARKER |
| 7 | D.M. | 114587 | 3/3/2014 | $3,904.68 | HOPE THOMLEY RANDY THOMLEY PARKER |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 8

### The Conspiracy and Its Object

75.    Paragraphs 1 through 45, and 48 through 72 of the Indictment are re-alleged and

15

incorporated by reference herein as though fully set forth herein.

76.     Beginning in or around April of 2012, and continuing through in or around January of 2016, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY and**
**HOWARD RANDALL THOMLEY,**

did knowingly and intentionally conspire, confederate, and agree with other persons known and unknown to the Grand Jury to distribute and dispense, outside the scope of professional practice and not for a legitimate medical purpose, quantities of ketamine, a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code Section, 846.

## COUNTS 9-13

77.     Paragraphs 1 through 45 and 48 through 72 of the Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

78.     On or about the dates identified in the table below, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY and**
**HOWARD RANDALL THOMLEY,**

aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally distribute and dispense, outside the scope of professional practice and not for a legitimate medical purpose, quantities of a Schedule III controlled substance:

| Count | Beneficiary | Prescription Date & Number | Controlled Substance | Defendant |
|---|---|---|---|---|
| 9 | C.B.B. | 9/21/2013 Rx. # C105757 | Ketamine | **HOPE THOMLEY** |
| 10 | D.M. | 10/24/2013 Rx. # C107816 | Ketamine | **HOPE THOMLEY RANDY THOMLEY** |
| 11 | S.M. | 10/24/2013 | Ketamine | **HOPE THOMLEY** |

16

| | | Rx. # C107817 | | **RANDY THOMLEY** |
|---|---|---|---|---|
| 12 | L.H. | 10/21/2014 Rx. # C139374 | Ketamine | **RANDY THOMLEY** |
| 13 | J.M. | 12/23/2014 Rx. # C147381 | Ketamine | **RANDY THOMLEY** |

All in violation of Title 21, United States Code, Sections 841(a)(1) and 2.

## COUNT 14

### The Conspiracy and Its Objects

79.     Paragraphs 1 through 45 and 48 through 72 of the Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

80.     Beginning in or around April of 2012, and continuing through in or around January of 2016, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY,**
**HOWARD RANDALL THOMLEY, and**
**GLENN DOYLE BEACH, JR.,**

did knowingly conspire and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a.      to knowingly and willfully solicit and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, TRICARE; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE, in violation Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B); and

17

b.     to knowingly and willfully offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, TRICARE; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE, in violation of Title 42, United States Code, Sections 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B).

### Purpose of the Conspiracy

81.     It was a purpose of the conspiracy for defendants and their co-conspirators to unlawfully enrich themselves by (1) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for arranging and recommending High-Yield Compounded Medication to be dispensed to TRICARE beneficiaries by Advantage Pharmacy, and (2) submitting and causing the submission of claims to TRICARE for High-Yield Compounded Medication procured by kickback payments.

### Overt Acts

82.     In furtherance of the conspiracy, and to accomplish its object and purpose, defendants and their co-conspirators committed and caused to be committed, in Lamar County, in the Southern District of Mississippi, and elsewhere, the following overt acts:

a.     On or about September 7, 2012, **HOPE THOMLEY** and **BEACH** signed an agreement whereby Advantage Pharmacy agreed to pay Total Care Marketing remuneration in exchange for referring prescriptions, including for TRICARE beneficiaries, to be filled at Advantage Pharmacy.   **BEACH** signed on behalf of Advantage Pharmacy, and **HOPE THOMLEY** signed on behalf of Total Care Marketing.

18

b.     **HOPE THOMLEY** and Co-Conspirator 1 controlled Total Care Marketing, which paid illegal kickbacks to subcontractors in exchange for referrals of prescriptions for beneficiaries, including TRICARE beneficiaries

c.     **RANDY THOMLEY** and **HOPE THOMLEY** recruited and paid illegal bribes and kickbacks to TRICARE beneficiaries to induce TRICARE beneficiaries to provide their personal identifying information and receive High-Yield Compounded Medication on behalf of themselves and their families. In addition, **BEACH** and his co-conspirators paid kickbacks to TRICARE beneficiaries in the form of covering their copayments in whole or in part.

d.     Schaar recruited and paid cash bribes to at least one prescriber to prescribe High-Yield Compounded Medication to beneficiaries, including TRICARE beneficiaries, who did not need the medication, and whom the prescriber had never met.

e.     In or around September 2014, Advantage Pharmacy billed TRICARE—a federal health care benefit program—for approximately eight fraudulent prescriptions written for certain TRICARE beneficiaries totaling approximately $67,311.40.

f.     On or about September 25, 2014, by way of a check signed by **BEACH,** Advantage Pharmacy remitted approximately $3,776,424.34 to Total Care Marketing—some of which constituted remuneration in exchange for referring TRICARE beneficiaries to Advantage Pharmacy.

g.     On or about September 25, 2014, by way of a check signed by **HOPE THOMLEY**, Total Care Marketing remitted approximately $957,040 to Advantage Marketing Professionals— some of which constituted remuneration in exchange for referring TRICARE beneficiaries to Advantage Pharmacy.

h.     On or about September 25, 2014, Advantage Marketing Professionals,

which was owned and operated by **RANDY THOMLEY**, remitted approximately $322,785 to UBV.

       i.      On or about September 30, 2014, **HOPE THOMLEY** wrote checks drawn on UBV to TRICARE beneficiaries J.A.H. and D.M. in the amounts of $1,900 and $2,458, respectively, in exchange for J.A.H. and D.M. receiving High-Yield Compounded Medication from Advantage Pharmacy on behalf of themselves and their family members.

       j.      On or about March 24, 2015, **RANDY THOMLEY** wrote checks drawn on UBV to TRICARE beneficiaries J.A.H. and D.M. in the approximate amount of $3,200 and $4,475.60, respectively, in exchange for J.A.H. and D.M. receiving High-Yield Compounded Medication from Advantage Pharmacy on behalf of themselves and their family members.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 15 - 20

83.    Paragraphs 1 through 45, 48 through 72 and 81 through 82 of the Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

84.    On or about the dates identified in the table below, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY,**
**HOWARD RANDALL THOMLEY, and**
**GLENN DOYLE BEACH, JR.,**

knowingly and willfully offered, paid, solicited and received remuneration, that is kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring TRICARE beneficiaries to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program

as defined in Title 42, United States Code, Section 1320a-7b(f), that is, TRICARE, as set forth below:

| Count | Description | Approximate Date of Payment | Amount | Defendants |
|---|---|---|---|---|
| 15 | Check paid by Advantage Pharmacy to Total Care Marketing in exchange for referring beneficiaries—including TRICARE beneficiaries—to Advantage Pharmacy. | 9/25/2014 | $3,776,424.34 | **BEACH HOPE THOMLEY** |
| 16 | Check paid by Total Care Marketing to Advantage Marketing Professionals in exchange for referring TRICARE beneficiaries to Advantage Pharmacy | 9/25/2014 | $957,040.20 | **HOPE THOMLEY RANDY THOMLEY** |
| 17 | Check paid by UBV to TRICARE beneficiary J.A.H. in exchange for J.A.H.'s receipt of High-Yield Compounded Medication | 9/30/2014 | $1,900.00 | **HOPE THOMLEY** |
| 18 | Check paid by UBV to TRICARE beneficiary D.M in exchange for D.M.'s receipt of High-Yield Compounded Medication | 9/30/2014 | $2,458.00 | **HOPE THOMLEY** |
| 19 | Check paid by UBV to TRICARE beneficiary J.A.H. in exchange for J.A.H.'s receipt of High-Yield Compounded Medication | 4/2/2014 | $3,200.00 | **RANDY THOMLEY** |
| 20 | Check paid by UBV to D.M. in exchange for D.M.'s receipt of High-Yield Compounded Medication | 3/30/2015 | $4,475.60 | **RANDY THOMLEY** |

Each of the above is a violation of Title 42, United States Code, Section 1320a-7b(b).

## COUNT 21
### Conspiracy and its Object

85.    Paragraphs 1 through 45, 48 through 72 and 81 through 82 of the Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

86.    Beginning in or around December 2015, and continuing through in or around May 2016,

21

in the Southern District of Mississippi, and elsewhere, the defendant,

## HOWARD RANDALL THOMLEY,

did conspire and agree with Schaar, Diaz, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly alter, destroy, mutilate, conceal, cover up, falsify or make a false entry in a record, document, or tangible object, specifically, patient files and TRICARE audit response forms for individuals to whom Diaz had prescribed High-Yield Compounded Medication filled and dispensed at Advantage Pharmacy, with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of a department or agency of the United States, specifically, a federal grand jury proceeding in the Southern District of Mississippi and a TRICARE investigation into the practices of Advantage Pharmacy, in violation of Title 18, United States Code, Section 1519.

### Purpose of the Conspiracy

87.     It was a purpose of the conspiracy for **RANDY THOMLEY** and his co-conspirators to impede, obstruct, or influence a federal grand jury investigation and a TRICARE audit into Advantage Pharmacy's claims to TRICARE for medically unnecessary High-Yield Compounded Medication by creating falsified patient records and making false entries in TRICARE audit forms to make it appear as though Diaz had examined beneficiaries and determined the medical necessity of High-Yield Compounded Medication before prescribing the same to beneficiaries.

### Overt Acts

88.     In furtherance of the conspiracy, and to accomplish its object and purpose, **RANDY THOMLEY** and his co-conspirators committed and caused to be committed, in Lamar County, in the Southern District of Mississippi, and elsewhere, the following overt acts:

    a.      In or around December 2015, TRICARE, via Express Scripts, audited the

22

High-Yield Compounded Medication prescribed by Diaz that Advantage Pharmacy had dispensed, and accordingly, requested that Diaz provide to TRICARE, via Express Scripts, the patient records supporting the signed Preprinted Prescription forms prescribing High-Yield Compounded Medication;

        b.      Thereafter, in or around January 2016, **RANDY THOMLEY** transported Diaz and Schaar to the residences of the TRICARE beneficiaries to whom Diaz had previously prescribed High-Yield Compounded Medication, for the purpose of Diaz creating fictitious patient records. Additionally, **RANDY THOMLEY** and his co-conspirators further created and backdated, or left undated, records for these beneficiaries to make it appear as though Diaz had examined the beneficiaries before he prescribed the High-Yield Compounded Medication that were filled and dispensed by Advantage Pharmacy;

        c.      **RANDY THOMLEY** assisted in creating these false patient records, knowing that Diaz would submit them to TRICARE in connection with an investigation into his prescriptions;

        d.      In or around March 2016, Diaz produced to TRICARE, via Express Scripts, the falsified patient records that he had created in response to the December 2015 TRICARE audit to make it appear as though he had examined the beneficiaries before prescribing the High-Yield Compounded Medication that were dispensed by Advantage Pharmacy;

        e.      In or around May 2016, Diaz produced to the United States Department of Defense and the United States Department of Justice pursuant to a federal subpoena the falsified patient records that he had created in response to the December 2015 TRICARE audit to make it appear as though he had examined the beneficiaries prior to prescribing the High-Yield Compounded Medication that were dispensed by Advantage Pharmacy.

All in violation of Title 18, United States Code, Section 371.

## COUNT 22

89.     Paragraphs 1 through 45, 48 through 72, 81 through 82, and 87 through 88 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

90.     On or about March 26, 2016, in Lamar County and in the Southern District of Mississippi, the defendant,

**GREGORY GRAFTON PARKER,**

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, an investigation into health care fraud, did knowingly and willfully make a materially false statement to special agents of and task force officers with the United States Department of Treasury, the United States Department of Defense, the United States Department of Justice, and the Federal Bureau of Investigation that were materially false. Specifically, **PARKER** stated that he had never written any prescriptions for compounded medication for any person that he had not seen, when in fact, as he knew then, he had signed blank prescriptions for High-Yield Compounded Medication and provided the same to **HOPE THOMLEY** to be filled in by **HOPE THOMLEY** at a later date.

All in violation of Title 18, United States Code, Section 1001.

## COUNT 23

### The Conspiracy and Its Objects

91.     Paragraphs 1 through 45, 48 through 72, 81 through 82, and 87 through 88 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

92.     From in or around April 2013, and continuing through in or around January 2016, within the Southern District of Mississippi and elsewhere, the defendants,

24

**HOPE EVANGULANE THOMLEY and**
**HOWARD RANDALL THOMLEY,**

did knowingly and intentionally conspire and agree with each other, and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, specifically:

      a.     to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, issuing and depositing checks and initiating wire transfers, which involved the proceeds of a specified unlawful activity, that is health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      b.     to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is issuing and depositing checks and initiating wire transfers, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), and laundering monetary instruments, in violation of Title 18, United States Code, Section 1956, in violation of Title 18, United States Code, Section 1957.

### Purpose of the Conspiracy

93.     It was a purpose of the conspiracy to conduct wire transfers and issue and deposit checks representing the proceeds of health care fraud, wire fraud, and paying and receiving health care kickbacks, to hide the proceeds and obscure their nature, location, source, ownership, and control. Additionally, it was a purpose to conduct transactions and purchases greater than $10,000 for the benefit of the defendants and co-conspirators.

### Manner and Means

94.     The following were among the manner and means used by the defendants and their co-conspirators to accomplish the objects of the conspiracy:

95.     The defendants and their co-conspirators conducted financial transactions that directed the proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to an account under their control in the name of UBV.

96.     The defendants and their co-conspirators conducted financial transactions between an account under their control in the name of UBV and their personal bank accounts to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks.

97.     The defendants and their co-conspirators conducted financial transactions using an account under their control in the name of UBV to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks by investing said proceeds, purchasing real and personal property, and paying kickbacks to co-conspirators involved in the scheme.

98.     The defendants and their co-conspirators conducted financial transactions between an

account under their control in the name of UBV and the Thomley Tree Farm to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks.

99.   The defendants and their co-conspirators conducted financial transactions between an account under their control in the name of UBV and Thomley Properties to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks.

100.   The defendants and their co-conspirators conducted financial transactions between an account under their control in the name of UBV, Solas Marketing, LLC, and Bone Forest to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks.

101.   The defendants and their co-conspirators purchased assets and made transfers in amounts greater than $10,000 that were derived from funds previously concealed by the defendants and their co-conspirators.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 24

### The Conspiracy and Its Objects

102.   Paragraphs 1 through 45, 48 through 72, 81 through 82, 87 through 88, and 93 through 101 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

103.   From in or around December 2013, and continuing through in or around January 2016, within the Southern District of Mississippi and elsewhere, the defendants,

**HOPE EVANGULANE THOMLEY**
**HOWARD RANDALL THOMLEY, and**
**GLENN DOYLE BEACH, JR.,**

27

did knowingly and intentionally conspire and agree with each other, Co-Conspirator 1, and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, specifically:

a.    to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, issuing and depositing checks and initiating wire transfers, which involved the proceeds of a specified unlawful activity, that is health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.    to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), with the intent to engage in conduct constituting a violation of Title 26, United States Code, Section 7206, specifically, filing tax returns containing materially false statements in order to falsely claim deductions and underreport taxable income, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(ii); and

       c.    to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is issuing and depositing checks and initiating wire transfers, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), and laundering monetary instruments, in violation of Title 18, United States Code, Section 1956, in violation of Title 18, United States Code, Section 1957.

### Purpose of the Conspiracy

104.   It was a purpose of the conspiracy to conduct wire transfers and issue and deposit checks representing the proceeds of health care fraud, wire fraud, and pay and receive health care kickbacks, to conceal said proceeds and obscure their nature, location, source, ownership, and control.

105.   It was a purpose of the conspiracy to conduct wire transfers and issue and deposit checks representing the proceeds of health care fraud, wire fraud, and pay and received health care kickbacks, with the purpose of conducting such transactions to falsely support deductions and underreport income on tax returns and receive tax benefits.

106.   It was a purpose of the conspiracy to conduct transactions and purchases greater than $10,000 for the benefit of the defendants and co-conspirators.

## Manner and Means

107.   The following were among the manner and means used by the defendants and their co-conspirators to accomplish the objects of the conspiracy:

108.   The defendants and their co-conspirators directed the proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to accounts in the name of IPMS.

109.   The defendants and their co-conspirators commingled their funds in accounts in the name of IPMS with other co-conspirators of the schemes to defraud in order to obscure and conceal their ownership.

110.   The defendants and their co-conspirators held accounts labeled "Series" followed by a letter corresponding to each co-conspirator to further anonymize the control of the funds.

111.   The defendants and their co-conspirators directed proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to the accounts of IPMS for the purpose of falsely claiming deductions and underreporting income on their federal income taxes.

112.   The defendants and their co-conspirators directed funds through the accounts of IPMS to shell entities used to further launder the funds, purchase real property, and benefit the defendants.

113.   The defendants and their co-conspirators purchased assets and made transfers in amounts greater than $10,000 that were derived from proceeds of specified unlawful activity previously concealed by the defendants and their co-conspirators.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 25

### The Conspiracy and Its Object

114.    Paragraphs 1 through 45, 48 through 72, 81 through 82, 87 through 88, 93 through 101, and 104 through 113 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

115.    From in or around May 2013, and continuing through in or around January 2016, within the Southern District of Mississippi and elsewhere, the defendant,

### GLENN DOYLE BEACH, JR.,

did knowingly and intentionally conspire and agree with each other, and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, specifically:

a.      to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, issuing and depositing checks and initiating wire transfers, which involved the proceeds of a specified unlawful activity, that is health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, that is issuing and depositing checks and initiating wire transfers, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), and laundering monetary instruments, in violation of Title 18, United States Code, Section 1956, in violation of Title 18, United States Code, Section 1957.

### Purpose of the Conspiracy

116. It was a purpose of the conspiracy to conduct wire transfers and issue and deposit checks representing the proceeds of health care fraud, wire fraud, and pay and receive health care kickbacks, to conceal and disguise the proceeds and obscure their nature, location, source, ownership, and control. Additionally, it was a purpose of the conspiracy to conduct transactions and purchases greater than $10,000 for the benefit of the defendants and co-conspirators.

### Manner and Means

117. The following were among the manner and means used by the defendant and his co-conspirators to accomplish the objects of the conspiracy:

118. The defendant and his co-conspirators directed funds earned from Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to an account under the control of BNSMTW which then dispersed said proceeds to accounts controlled by the defendant and his co-conspirators.

119. The defendant and his co-conspirators directed the proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to an account under his control in the name

32

of TLC RX.

120.    The defendant and his co-conspirators used an account under their control in the name of TLC RX to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks, in part by investing said proceeds and using them to purchase real and personal property.

121.    The defendant and his co-conspirators used N & P Farms and Bone Forest to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from health care fraud, wire fraud, and paying and receiving health care kickbacks.

122.    The defendant and his co-conspirators purchased assets and made transfers in amounts greater than $10,000 that were derived from proceeds of specified unlawful activity previously concealed by the defendant and his co-conspirators.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 26

· 123.    Paragraphs 1 through 45, 48 through 72, 81 through 82, 87 through 88, 93 through 101, 104 through 113, and 116 through 122 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

124.    On or about January 2, 2014, in the Southern District of Mississippi and elsewhere, the defendant,

### HOPE EVANGULANE THOMLEY,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, issue check #1319 from an account at the First Bank ending in #2685 in the name of UBV to an account at Wells Fargo Bank ending in #6960 in the name of

IPMS for $3,000,000.00, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 27

125.    Paragraphs 1 through 45, 48 through 72, 81 through 82, 87 through 88, 93 through 101, 104 through 113, and 116 through 122 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

126.    On or about October 7, 2013, in the Southern District of Mississippi, the defendant,

### HOWARD RANDALL THOMLEY,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, issue check #1275 from an account at the First Bank ending in #2685 in the name of UBV to an account at The First bank ending in #1316 in the name of Thomley Tree Farm for $50,000.00, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and

control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 28

127.    Paragraphs 1 through 45, 48 through 72, 81 through 82, 87 through 88, 93 through 101, 104 through 113, and 116 through 122 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

128.    On or about January 2, 2014, in the Southern District of Mississippi,  the defendant,

### GLENN DOYLE BEACH, JR.,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, issue check #1073 from an account at the Regions Bank ending in #8585 in the name of TLC RX to an account at Wells Fargo Bank ending in #6960 in the name of IPMS for $606,499.81, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

35

## FORFEITURE ALLEGATIONS

129.    Upon conviction of any of the offenses alleged in Counts One through Seven and/or Counts Fourteen through Twenty of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, pursuant to Title 18, United States Code, Section 982(a)(7), and any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The grand jury finds probable cause that, based on the evidence provided during presentment, the following property is subject to forfeiture:

| Criminal Forfeiture Identifier | Identifier from parallel Civil Case *United States v. Real Property Located at 19 Crane Park*, 3:16-cv-27 | Asset Description |
|---|---|---|
| A1 | A-019 | $67,257.24 seized from The First account number 15001365, an account in the name of Total Care Marketing, LLC. |
| A2 | A-017 | $1,567,980.07 seized from Citizens National Bank account number 101773786, an account in the name of Advantage Pharmacy, LLC. |
| A3 | A-056 | $504,951.72 seized from Priority One Bank (Priority) account number 282814, an account in the name of Advantage Medical Infusion, LLC, doing business as AMI Rx. |
| A4 | A-027 | $3,465.86 seized from Magnolia account number 8601395, an account in the name of Advantage Marketing Professionals, LLC. |
| A5 | A-054 | $3,277.47 seized from Regions account number 7511465051, an account in the name of Glenn Doyle Beach or T.B. |
| A6 | A-053 | $37,507.72 seized from Regions account number 196479361, an account in the name of Glenn Doyle Beach or T.B. |
| A7 | A-057 | $500.00 seized from Priority account number 283283, an account in the name of Development Industries Inc. |

130.    Upon conviction of the any of the offenses alleged in Counts One through Seven, Counts Fourteen through Twenty, and/or Counts Twenty-three through Twenty-eight of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and any property, real or personal, involved in these offenses, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The grand jury finds probable cause that, based on the evidence provided during presentment, the following property is subject to forfeiture:

| Criminal Forfeiture Identifier | Identifier from parallel Civil Case *United States v. Real Property Located at 19 Crane Park*, 3:16-cv-27 | Asset Description |
|---|---|---|
| A8 | A-026 | $24,425.11 seized from Regions account number 166088585, an account in the name of TLC RX, LLC. |
| A9 | A-029 | $2,953,435.80 seized from Priority account number 286328, an account in the name of IPMSI Holdings, LLC Series E. |
| A10 | A-030 | $342,755.98 seized from Priority account number 283176, an account in the name of N&P Farms, LLC. |
| A11 | A-048 | $59,935.47 seized from The First account number 15002538, an account in the name of Bone Forest, LLC. |
| A12 | A-095 | $301,613.10 seized from Brinker 676337448, an account in the name of TLC RX, LLC Retirement Plan. |
| A13 | A-096 | $247,805.47 seized from Brinker 676337079, an account in the name of TLC RX, LLC Retirement Plan. |

37

| A14 | A-003 | $672,304.62 seized from The First account number 15002660, an account in the name IPMSI Holdings, LLC, Series B. |
| A15 | A-020 | $513,692.49 seized from The First account number 5032685, an account in the name of United Business Ventures LLC. |
| A16 | A-021 | $570,314.01 seized from The First account number 15001605, an account in the name of Thomley Properties, LLC. |
| A17 | A-035 | $1,317,217.30 seized from NY Life IA account number N-29-035297, an account in the name of IPMSI Holdings LLC, Series B. |
| A18 | A-036 | $12.05 seized from NY Life IA L36-001512-1, an account in the name of IPMSI Holdings, LLC, Series B. |
| A19 | A-039 | $.16 seized from NY Life IA L36-002525, an account in the name of Hope Thomley Holdings, LLC. |
| A20 | A-040 | $.16 seized from NY Life IA L36-002526, an account in the name of Howard Thomley Holdings, LLC. |
| A21 | A-044 | $29,392.02 seized from The First account number 3107760, an account in the name of Hope Evangeline Thomley. |
| A22 | A-047 | $5,528.88 seized from The First account number 15001316, an account in the name of Thomley Christmas Tree Farm, LLC. |
| A23 | A-048 | $59,935.47 seized from The First account number 15002538, an account in the name of Bone Forest, LLC. |
| A24 | A-061 | $55,256.31 seized from NY Life IP number 63814930. |
| A25 | A-062 | $83,056.18 seized from NY Life IP number 63814927. |
| A26 | A-063 | $216,633.64 seized from NY Life IA L36-001513, an account in the name of IPMSI Holdings, LLC, Series B. |
| A25 | A-064 | $253,495.66 seized from NY Life IA L36-001514, an account in the name of IPMSI Holdings, LLC, Series B. |
| A26 | A-065 | $347,975.52 seized from NY Life IA L36-001515, an account in the name of IPMSI Holdings, LLC, Series B. |
| A27 | A-066 | $548,136.28 seized from NY Life IA L36-001516, an account in the name of IPMSI Holdings, LLC, Series B. |
| A28 | A-067 | $129,933.17 seized from NY Life IA L36-001517, an account in the name of IPMSI Holdings, LLC, Series B. |
| A29 | A-068 | $504,585.94 seized from NY Life IA L36-001518, an account in the name of IPMSI Holdings, LLC, Series B. |
| A30 | A-079 | $907,565.26 seized from NY Life IA L36-002522, an account in the name of Hope Thomley Holdings, LLC. |
| A31 | A-080 | $905,791.27 seized from NY Life IA L36-002523, an account in the name of Hope Thomley Holdings, LLC. |
| A32 | A-081 | $521,925.05 seized from NY Life IA L36-002524, an account in the name of Hope Thomley Holdings, LLC. |

| A33 | A-082 | $701,345.58 seized from NY Life IA L36-002521, an account in the name of Hope Thomley Holdings, LLC. |
| A34 | A-083 | $701,673.89 seized from NY Life IA L36-002527, an account in the name of Howard Thomley Holdings, LLC. |
| A35 | A-084 | $907,748.22 seized from NY Life IA L36-002528, an account in the name of Howard Thomley Holdings, LLC. |
| A36 | A-085 | $905,851.68 seized from NY Life IA L36-002529, an account in the name of Howard Thomley Holdings, LLC. |
| A37 | A-086 | $522,022.68 seized from NY Life IA L36-002530, an account in the name of Howard Thomley Holdings, LLC. |
| A38 | A-097 | $547,683.93 seized from Brinker 676209499, an account in the name of UBV, LLC Retirement Plan. |
| A39 | A-098 | $796,876.48 seized from Brinker 676209431, an account in the name of UBV, LLC Retirement Plan. |
| A40 | A-031 | $64,745.86 seized from WFB account number 1763836960, an account in the name of Intellectual Property Management Services (IPMSI), LLC. |
| A41 | A-032 | $415,717.75 seized from 1st Source account number X6883, an account in the name of Intellectual Property Management Services, LLC. |
| A42 | A-051 | $9,809.40 seized from The First account number 15001795, an account in the name of Solas Marketing, LLC. |
| B1 | B-018 | 2015 Mercedes Benz G550, VIN DYCYC3HFXFX233494, Tag MS 466S6, with all attachments thereon, registered to Hope E. Thomley or Randy Thomley. |
| B2 | B-019 | 2014 Porsche Panamera, VIN WP0AA2A72EL010995, Tag MS 721S5, with all attachments thereon, registered to Hope E. Thomley or Randy Thomley. |
| B3 | B-020 | 2013 Ford F-150 Crew Cab, VIN 1FTFW1R6ODFC54655, Tag MS RAPTR32, with all attachments thereon, registered to United Business Ventures, LLC. |
| B4 | B-023 | 2014 Audi Q7, VIN WA1DGAFE0ED016621, Tag MS LMF 363, with all attachments thereon, registered to Glenn Doyle Beach. |
| B5 | B-024 | 2013 Jeep Wrangler, VIN 1C4HJWEG8DL579557, Tag MS IMI 620, with all attachments thereon, registered to Glenn Doyle Beach, Jr. |
| B6 | B-025 | 2012 Dodge Ram 2500, VIN 3C6UD5PL0CG199450 with all attachments thereon, registered to Glenn Doyle Beach doing business as N&P Farms, LLC. |
| C1 | C-045 | Parcel 164-20-042.000 (Hwy. 44), Parcel 165-21-020.000 (Foster Rd.), Parcel 165-22-007.000 (JD Hatten Rd.), Parcel 165-22-023.000 (Foster Rd.), and Parcel 168-28- |

001.000 (Foster Rd.), Lamar County, MS, titled to Bone Forest LLC.

Legally described as:

20 acres, more or less, being in the West ½ of the NE ¼ of the NW ¼ of Section 22, Township 5 North, Range 16 West, Lamar County, Mississippi;

AND ALSO Beginning at a pine knot grader blade and x-tie fence corner found on the SE corner of the NW ¼ of the SW ¼ of Section 22, Township 5 North, Range 16 West, Lamar County, Mississippi; thence North 00°03'47" West a distance of 1318.96 feet to an iron pin and fence corner; thence North 89°14'48" East a distance of 1322.71 feet to a pine knot; thence South 00°31'29" East a distance of 1339.83 feet to a x-tie fence corner; thence North 89°51'11" West a distance of 1333.42 feet back to the Point of Beginning; containing 40.53 acres, more or less, and being in the NW ¼ of the SW ¼ of Section 22, Township 5 North, Range 16 West, Lamar County, Mississippi;

AND ALSO Beginning at a pine knot grader blade and x-tie fence corner found on the SE corner of the NW ¼ of the SW ¼ of Section 22, Township 5 North, Range 16 West, Lamar County, Mississippi, said point being the Point of Beginning; thence South 00°06'35" West a distance of 1323.44 feet to a pine knot and grader blade; thence South 00°32'30" East a distance of 1313.73 feet to an iron pin; thence South 89°52'45" West a distance of 1300.00 feet to a pine knot and grader blade; thence North 00°32'49" West a distance of 1319.42 feet; thence South 89°36'58" West a distance of 1309.55 feet to an iron pin; thence North 00°12'29" East a distance of 1313.39 feet to an iron pin and t-post; thence South 89°22'10" West a distance of 1304.76 feet to a t-post; thence North 00°03'12" West a distance of 1302.47 feet to a found pine knot; thence North 89°16'27" West a distance of 1962.77 feet to an iron pin; thence North 00°11'04" East a distance of 1330.31 feet to an iron pin; thence North 89°23'51" East a distance of 3216.25 feet to a x-tie fence corner; thence South 01°01'49" East a distance of 2014.89 feet to an iron pin; thence North 89°28'13" East a distance of 1297.83 feet to an iron pin; thence North 00°32'49" West a distance of 659.80 feet to a nail in the center of Foster Road and the point of curve of a non-tangent curve to the left, of which

| | | |
|---|---|---|
| | | the radius point lies North 86°28'08" East a radial distance of 458.08 feet; thence along the center of said road South along the arc having a chord direction of South 15°57'59" East a chord distance of 197.29 feet, through a central angle of 24°52'15" a distance of 198.84 feet; thence continuing along said road South 28°24'06" East a distance of 989.43 feet to the point of curve of a non-tangent curve to the left, of which the radius point lies North 60°00'04" East a radial distance of 867.12 feet; thence continuing along said road SE along the arc having a chord direction of South 41°29'45" East a chord distance of 345.66 feet, through a central angle of 22°59'37", a distance of 347.99 feet to a railroad spike; thence leaving said road run North 89°57'03" East a distance of 573.99 feet back to the Point of Beginning; containing 287.01 acres, more or less, and located in the NE ¼ of the NE ¼ of Section 28; the SE ¼ and the NE ¼ of the SW ¼ and the South ½ of the NW ¼ of Section 21; and the East ½ of SE ¼ of the NE ¼ of Section 20; all in Township 5 North, Range 16 West, Lamar County, Mississippi; together with all improvements thereon and appurtenances thereunto belonging. |
| C2 | C-047 | 123 Higgins Rd. Sumrall, Lamar County, MS, titled to Glenn Doyle Beach Jr. and T.B. |
| | | Legally described as: <br><br> Real property located at 123 Higgins Road, Sumrall, Lamar County, Mississippi, more particularly described as: <br><br> Parcel No. 162-03-022.001 <br><br> This is to certify that I have surveyed the part and parcel of property located in the Northwest ¼ of the Southwest 1/4, Section 3, T-5-N, R-16-W, Lamar County, Mississippi being more particularly described as follows: <br><br> Commence at a found pine knot at the Southwest corner of the Northwest ¼ of the Southwest 1/4 , Section 3, Township 5 North, Range 16 West, Lamar County, Mississippi and run S89°53'27" E 485.34 feet to a set ½" rebar and the point of beginning; from said point of beginning run N07°10'04"W 245.61 feet to a set ½" rebar; thence run N70°28'04" E 180.04 feet to a set ½" rebar; thence run N40°43'09" E 91.63 feet to a set ½ " rebar; thence run S83°23'10" E 95.90 feet to a found ½" rebar; thence run on and along a curve that curves to the left and |

| | | |
|---|---|---|
| | | has a radius of 214.44 feet, a central angle of 43°50'36" for 164.09 feet, a long chord of N71°01'38" E for 160.12 feet to a found ½" rebar on the Western right of way line of Higgins Road; thence run S30°52'18" E 91.36 feet along said right of way line to a found ½" rebar; thence run on and along a curve that curves to the left and has a radius of 1125.87 feet, a central angle of 16°22'21" for 321.72 feet, a long chord of S36°14'44" E for 320.63 feet to a found ½" rebar on the Western right of way line of Higgins Road; thence run S43°26'36" E for 108.41 feet along said right of way line to a found 1/2" rebar on the Western right of way line of Higgins Road; thence leaving said right of way line run N89°53'27" W 756.52 feet, back to the point of beginning, said parcel contains 4.88 acres, more or less; all together with all improvements thereon and appurtenances thereunto belonging. |
| C3 | C-014 | 13 Cross Key Big Bay Lake (Lot 3), 29 Cross Key Big Bay Lake (Lot 7), and 33 Cross Key Big Bay Lake (Lot 8), Lamar County, Mississippi, all three parcels titled to Thomley Properties, LLC. |
| | | Legally described as:<br><br>LOTS 3, 7 and 8 OF BIG BAYLAKE COMMUNITY, NEIGHBORHOOD CROSS KEY, A SUBDIVISION OF LAMAR COUNTY, MISSISSIPPI, AS PER THE MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF LAMAR COUNTY, MISSISSIPPI.<br><br>LESS AND EXCEPT the following, all of which are hereby reserved unto Grantor, its successors and assigns:<br><br>(i)　any and all oil, gas and/or other minerals owned by Grantor lying in, on or under the real property conveyed by this Warranty Deed (the "Lot Conveyed"); and<br><br>(ii) any and all rights, including without limitation voting rights, owned or held by Grantor to amend, change or tcm1inate the Land Partners Restrictions (as defined in the Declaration (as herein defined)).<br><br>ALSO LESS AND EXCEPT the following, all of which are hereby excluded from this conveyance md the warranties hereof: |

|  |  | The real property and all rights described and/or conveyed it1 the Warranty Deed from Grantor to Big Bay Lake Holdings, LLC, a Mississippi limited liability company, which is of record in the office of the Chancery Clerk of Lamar County, Mississippi (the "Office") at Land Deed Book 20-K, at Page 508 and/or in the Corrective Warranty Deed from Grantor to said Big Bay Lake Holdings, LLC which is of record in the Office at Land Deed Book 20-L at Page I 05, provided, however, that this exception is not intended to exclude any easements or other rights provided for under and pursuant to the Lake Agreement (as defined in the Declaration (as herein defined)), but only to the extent provided for therein and subject to all of the terms thereof, provided further· however, that Grantor makes no representations or warranties with respect to such Lake Agreement. |
|---|---|---|
| C4 | C-015 | Lot 3 of Pier Point, Big Bay Lake, Lamar County, MS, further described in Exhibit #1, titled to Thomley Properties, LLC. |
|  |  | Legally described as:<br><br>LOT 3, OF BIG BAY LAKE COMMUNITY, NEIGHBORHOOD PIER POINT, A SUBDIVISION OF LAMAR COUNTY, MISSISSIPPI, AS PER THE MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF LAMAR COUNTY, MISSISSIPPI. |
| C5 | C-016 | Lot 8 of Fisher Point Big Bay Lake, Lamar County, MS, further described in Exhibit #1, titled to Thomley Properties, LLC. |
|  |  | Legally described as:<br><br>LOT 8, OF BIG BAY LAKE COMMUNITY, NEIGHBORHOOD FISHER POINT, A SUBDIVISION OF LAMAR COUNTY, MISSISSIPPI, AS PER THE MAP OR PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF LAMAR COUNTY, MISSISSIPPI. |
| C6 | C-017 | Lot 5 Lure Line Big Bay Lake, Lot 16 Lure Line Big Bay Lake, and Lot 42 Lure Line Big Bay Lake, Lamar County, MS, further described in Exhibit #1, titled to Thomley Properties LLC. |
|  |  | Legally described as:<br><br>LOTS 5, 16 and 42 OF BIG BAY LAKE COMMUNITY, NEIGHBORHOOD LURE LINE, A SUBDIVISION OF |

| | | |
|---|---|---|
| | | LAMAR COUNTY, MISSISSIPPI, AS PER THE MAP OR PLAT THEREOF ON FILE. AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF LAMAR COUNTY, MISSISSIPPI. LESS AND EXCEPT the following, all of which are hereby reserved unto Grantor, its successors and assigns: |
| | | (i)      any and all oil, gas and/or other minerals owned by Grantor lying in, on or under the real property conveyed by this Warranty Deed (the "Lot Conveyed"); and |
| | | (ii) any and all rights, including without limitation voting rights, owned or held by Grantor to amend, change or terminate the Land Partners Restrictions (as defined in the Declaration (as herein defined)). |
| | | ALSO LESS AND EXCEPT the following, all of which are hereby excluded from this conveyance and the warranties hereof; |
| | | The real property and all rights described and/or conveyed in the Warranty Deed from Grantor to Big Bay Lake Holdings, LLC, a Mississippi limited liability company, which is of record in the office of the Chancery Clerk of Lamar County, Mississippi (the "Office") at Land Deed Book 20-K, at Page 508 and/or in the Corrective Warranty Deed from Grantor to said Big Bay Lake Holdings, LLC which is of record in the Office at Land Deed Book 20-L at Page 105, provided, however, that this exception is not intended to exclude any easements or other rights provided for under and pursuant to the Lake Agreement (as defined in the Declaration (as herein defined}), but only to the extent provided for therein and subject to all of the terms thereof, provided further, however, that Grantor makes no representations or warranties with respect to such Lake Agreement |
| C7 | C-036 | 23 Deer Valley Dr. Hattiesburg, Lamar County, MS, titled to Howard Randy Thomley and Hope E. Thomley. |
| | | Legally described as: |
| | | Real property located at 23 Deer Valley Drive, Hattiesburg, Lamar County, Mississippi, more particularly described as: |
| | | Parcel No. 055K-22-109.000 |

| | | |
|---|---|---|
| | | Lot 48 Le Papillon, Phase III, Lamar County, Mississippi, as per the map or plat thereof on file in the office of the Chancery Clerk of Lamar County, Mississippi, in Plat Book 3, page 262, Slide 326, together with all improvements thereon and appurtenances thereunto belonging.<br><br>Indexing Instructions:  Lot 48, Le Papillon, Phase III, Lamar County, Mississippi.  Plat Book 3, page 262, Slide 326. |
| C8 | C-037 | 50 Hegwood Dr., Hattiesburg, Lamar County, MS, titled to Thomley's Christmas Tree Farm LLC. |
| | | Legally described as:<br><br>Real property located at 50 Hegwood Road, Hattiesburg, Lamar County, Mississippi, more particularly described as:<br><br>Parcel No. 055Q-22-002.000<br><br>The N ½ of the NW ¼ of the SW ¼ of Section 22, Township 4 North, Range 14 West of Lamar County, Mississippi; together with all improvements thereon and appurtenances thereunto belonging. |
| C9 | C-038 | 197 Canebrake Blvd., Hattiesburg, Lamar County, MS, titled to Thomley Properties, LLC. |
| | | Legally described as:<br><br>Real property located at 197 W Canebrake Blvd., Hattiesburg, Lamar County, Mississippi, more particularly described as:<br><br>Parcel No. 101Q-12-006.000<br><br>Lot 15, Canebrake, Brake S, a Subdivision of the County of Lamar, State of Mississippi, as per the map or plat thereof on file and of record in the office of the Chancery Clerk of Lamar County, Mississippi, at Plat Book 2, Page 28, Slide A-95. |
| C10 | C-039 | 56 98 Place Blvd., Hattiesburg, Lamar County, MS, titled to Thomley Properties LLC. |
| | | Legally described as:<br><br>Real property located at 56 98 Place Blvd., Hattiesburg, Lamar County, Mississippi, more particularly described as:<br><br>Parcel No. 052N-09-002.000 |

| | | |
|---|---|---|
| | | Commence at an iron pipe at the Northeast corner of the Northwest ¼ of the Southwest ¼ of Section 9, Township 4 North, Range 14 West, Lamar County, Mississippi and run South 00 degrees 00 minutes 39 seconds East for 1,142.16 feet to a ½" rebar and the Point of Beginning. From the Point of Beginning continue South 00 degrees 00 minutes 39 seconds East for 68.00 feet to a ½" rebar; thence run South 89 degrees 38 minutes 54 seconds West for 203.61 feet to a ½" rebar on the East right of way line of 98 Place Blvd. (Paved Public Road); thence run on and along said right-of-way line North 00 degrees 01 minutes 20 seconds West for 68.00 feet to a ½" rebar; thence leaving said right-of-way line run North 89 degrees 38 minutes 54 seconds East for 203.63 feet back to the Point of Beginning. Said parcel of land is part of the Northwest ¼ of the Southwest ¼ of Section 9, Township 4 North, Range 14 West, Lamar County, Mississippi and contains 0.32 acres more or less; together with all improvements thereon and appurtenances thereunto belonging. |
| C11 | C-040 | 775 Gulf Shore Dr. #36, Destin, Okaloosa County, FL, titled to Howard, and Hope Thomley. |
| | | Legally described as: Real property located at 775 Gulf Shore Drive, Bldg. 36, Destin, Okaloosa County, Florida, more particularly described as: Parcel No. 00-2S-22-213S-0000-0360 That certain Condominium parcel known as Building No. 36, Sandpiper Cove, Phase X, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 1110, Page 797, amended in Official Records Book 1245, Page 788, Official Records Book 1245, Page 796, Official Records Book 1468, Page 1705 and Official Records Book 1468, Page 1710, of the Public Records of Okaloosa County, Florida, together with an undivided interest in the common elements appurtenant thereto, subject to and in accordance with the covenants, conditions, restrictions, terms and other provisions of said Declaration. |
| C12 | C-041 | 775 Gulf Shore Dr. #9136, Destin, Okaloosa County, FL, titled to Thomley Properties, LLC. |
| | | Legally described as: |

| | | |
|---|---|---|
| | | Real property located at 775 Gulf Shore Drive, Bldg. 6, Unit #9136, Destin, Okaloosa County, Florida, more particularly described as:<br><br>Parcel No. 00-2S-22-214M-0006-9136<br><br>That certain condominium parcel composed of BUILDING 6, UNIT NO. 9136, and the undivided share in the common elements appurtenant thereto, in accordance with and subject to the covenants, restrictions, terms and other provisions of the Declaration of Condominium of Sandpiper Cove Phase XXV, with the schedules annexed thereto, as recorded in Official Records Book 2018, Page 1726-1818, inclusive, of the Public Records of Okaloosa County, Florida. |
| C13 | C-042 | 775 Gulf Shore Dr. #2154, Destin, Okaloosa County, FL, titled to Thomley Properties, LLC. |
| | | Legally described as:<br><br>Real property located at 775 Gulf Shore Drive, Bldg. 158, Unit #2154, Destin, Okaloosa County, Florida, more particularly described as:<br><br>Parcel No. 00-2S-22-213K-0158-2154<br><br>Family Unit No. 2154, Building 158, Sandpiper Cove Phase II, as per the Declaration of Condominium thereof, recorded in Official Records Book 734, Page 143, together with any amendments thereto, of the Public Records of Okaloosa County, Florida. |
| C14 | C-043 | 775 Gulf Shore Dr. #2085, Destin, Okaloosa County, FL, titled to Thomley Properties, LLC. |
| | | Legally described as:<br><br>Real property located at 775 Gulf Shore Drive, Bldg. 35, Unit #2085, Destin, Okaloosa County, Florida, more particularly described as:<br><br>Parcel No. 00-2S-22-213L-0035-2085<br><br>Family Unit No. 2085, Building 35, Sandpiper Cove, Phase III, as per the Declaration of Condominium thereof, recorded in Official Records Book 762, Page 169, and amended in Official Records Book 842, Page 35, Official Records Book 1245, Page 788, Official Records Book 1245, page 796 and Official Record Book 1360, Page 283, |

| | | together with any amendments thereto, of the Public Records of Okaloosa County, Florida. |
|---|---|---|
| C15 | C-044 | 775 Gulf Shore Dr. #9104, Destin, Okaloosa County, FL, titled to Thomley Properties, LLC. |
| | | Legally described as: |
| | | Real property located at 775 Gulf Shore Drive, Bldg. 9, Unit #9104, Destin, Okaloosa County, Florida, more particularly described as: |
| | | Parcel No. 00-2S-22-214M-0009-9104 |
| | | That certain Condominium Parcel composed of Unit No. 9104, and the undivided share in the common elements appurtenant thereto in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions osf the Declaration of Condominium of SANDPIPER COVE, PHASE XXV, with the schedules annexed thereto, as recorded in Official Records Book 2018, Page 1726, of the Public Records of Okaloosa County, Florida. |
| C16 | C-046 | 47 Copper Creek, Hattiesburg, Lamar County, MS, titled to B.B. |
| | | Legally described as: |
| | | Real Property located at 47 Copper Creek, Hattiesburg, Lamar County, Mississippi, more particularly described as: |
| | | Parcel No. 045N-19-002.082 |
| | | Lot 81 of Clear Creek Subdivision, Phase II, of Lamar County, Mississippi, as per the map or plat thereof on file and of record in the Office of the Chancery Clerk of Lamar County, Mississippi, at Plat Book 3, Page 316, Slide 380. |

131.   The United States will also seek forfeiture money judgments against the defendants in the amount of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of Counts One through Seven and Fourteen through Twenty, pursuant to Title 18, United States Code, Section 982(a)(7).

132.   The United States will also seek forfeiture money judgments against the defendants in

the amount equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to Count One, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

133.   The United States will also seek forfeiture money judgments against the defendants in the amount equal to the value of any property, real or personal, involved in Counts Twenty-three through Twenty-eight, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

134.   Upon conviction of any of the offense alleged in Counts Eight through Thirteen, the defendants shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of these offenses; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of these offenses. The United States will seek a forfeiture money judgment against the defendant equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of this offense.

135.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

Criminal Forfeiture, in violation of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(a)(7), and Title 21, United States Code, Section 853(a) and 853(p), and Title 28, United States Code, Section 2461(c).

D. MICHAEL HURST, JR.
United States Attorney

A TRUE BILL:
s/ signature redacted

Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or the deputy foreperson of the Grand Jury on this the _15th_ day of May, 2018.

UNITED STATES MAGISTRATE JUDGE

50