IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:18-cr-18-KS-MTP

HOPE EVANGULANE THOMLEY.
HOWARD RANDALL THOMLEY, and
GLENN DOYLE BEACH, JR.,

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
DEFENDANT BEACH'S MOTION TO COMPEL BRADY MATERIAL**

Comes now the United States, through counsel, and respectfully responds to the Defendant Glenn Doyle Beach, Jr.'s ("Defendant Beach" or "Defendant") Motion to Compel Brady Material (Doc. 156, the "Motion").

In the Motion, Defendant Beach raises a number of arguments that are the subject of other pending motions, and unrelated to the present *Brady* issue. On the subject of the *Brady* issue, Defendant Beach misstates both facts and law in order to support his argument that the government must identify each and every potentially exculpatory document provided in discovery. Therefore, his Motion should be denied for the reasons set forth herein.

**I.  Arguments Raised In Other Motions**

First, Defendant Beach re-raises a number of issues unrelated to the *Brady* issue that are already being addressed in connection with his Amended Motion to Suppress Evidence (Doc. 135), which is fully briefed and pending before the Honorable Judge Keith Starrett. Those issues are:

- Defendant Beach's complaint about the scope of the search warrant (Mot. at 7);
- Defendant Beach's complaint about the government's filter review process (Mot. at 17-18).

In addition, Defendant Beach's concern about the trial date (Mot. at 13 n.5) has already been addressed in his joinder to Defendants Hope Evangulane Thomley and Defendant Howard Randall Thomley's (together the "Thomley Defendants" and with Defendant Beach, the "Defendants") Motion to Continue the trial date. The Motion to Continue was granted in part, and the trial has been continued to March 19, 2019. Accordingly, those issue are now moot.

To the extent necessary, the government incorporates by reference its responses to those prior motions, but focuses the instant response on the new, purported *Brady* issues raised in the present Motion.

## II.     The Facts

### A.     There Was No Document Dump; the Government Produced Files Relevant to this Indictment.

Defendant Beach misinforms the Court that the government "seiz[ed] voluminous electronic and hard copy materials, and thereafter provid[ed] Defendants…with a blind copy or mirror image of the *entirety* of the documents seized by the government." (Mot. at 12, emphasis added).

Instead, producing discovery to the various defendants in this substantial investigation has been a careful balancing act. With regard to this Indictment, Rule 16 required a large production: the government was duty bound to return to the Defendants all of the documents obtained or collected from them. Rule 16(a)(1)(E)(iii).[1]  As for the remainder of the documents produced, the

---

[1] The Electronic Evidence, defined below, was returned to the Defendants pursuant to Rule 16(a)(1)(E)(iii). Likewise, a large production of emails collected in a search warrant was returned to them. Together, these items constitute more than 98% of the government's production.

government attempted to err on the side of inclusiveness, but the production was, by no means, a "document dump."[2]

Thus, in pursuit of his "document dump" narrative, Defendant omits and misstates critical facts. First, contrary to Defendant Beach's statement to this Court, the government has not produced the "entirety" of its file. Instead, it has carefully chosen discovery in this case for production. During the course of this investigation, the government executed searches at approximately eight search sites, at which time, it seized a number of computers, servers, and other machines that would be imaged and analyzed (the "Electronic Evidence"). However, it produced to the Defendants only the Electronic Evidence collected from *three* sites of specific relevance to the present Indictment against these Defendants: Advantage Pharmacy, Total Care Marketing, and AMI Pharmacy.

To put this in perspective, in the January 21, 2016 searches, the government collected approximately 42 terabytes of data from all of the sites combined. In discovery for this case, it produced less than a quarter of that volume to the Defendants as Electronic Evidence—just over ten terabytes of data.

Indeed, even that "ten terabytes" vastly overstates the amount of evidence produced: less than 5% of the ten terabytes is *actually reviewable evidence*. This is because these Electronic Evidence computers were imaged, and the entire images were returned to the Defendants in compliance with Rule 16. But a large portion of the computer images is comprised of software located on the computers, such as Microsoft Windows, or Quicken, or the Microsoft Office Suite. These programs take up significant storage space, but obviously cannot be "reviewed" or tagged

---

[2] A more comprehensive summary of the discovery produced to date can be found in the government's Response to the Thomley Defendants' Joint Motion to Continue the trial date, which the government incorporates by reference herein. (Doc. 162).

as evidence. However, these large programs also make it infinitely easier for the Defendants to actually review the documents, because in this image format, the documents remain organized in precisely the order in which they were found at the search sites.

During preparation for trial, a fourth search site—Wade Walters Consulting—was determined to contain a small amount of relevant information. The computers and servers collected from that site yielded approximately 1.6 terabytes of data. Instead of "dumping" all of that data collected from the Wade Walters Consulting site on the Defendants, the government electronically searched those computers for files that appeared to be relevant to these Defendants. The government then conducted a document-by-document review of the files returned in the search. In the end, the government produced only 87 documents of relevance to the case from that Wade Walters Consulting site to the Defendants.

In addition, during the searches, the government collected hundreds of boxes of hard copy documents from the search sites. Rather than producing the several hundreds of boxes, the government produced only 171 boxes of documents of particular relevance to these Defendants (the "Hard Copy Documents").[3] These were the boxes collected from the three specific search sites identified above.

Likewise, the entire multi-pharmacy, multi-agency case file contains more than a thousand reports of interviews by federal agents of targets and witnesses. The government searched through those reports, and produced approximately 250 reports that it believed were relevant to the instant Indictment. The government collected bank records from hundreds of accounts, but carefully produced only those accounts that were relevant to the present Indictment. The grand jury served

---

[3] As explained more fully below, these physical boxes of Hard Copy Documents were scanned by the government and produced to the Defendants in electronic, text-searchable form.

subpoenas on numerous other entities, but the government has carefully produced only those returns that it believed to be most relevant to the present case.

Finally, pending before the Court is the government's Motion to Disclose IRS Records In Discovery (Doc. 147). In that motion, the Court can see the painstaking analysis the government went through in order to ensure that the right documents went to the right people.

In short, the production is certainly large. But it is no larger than Rule 16 requires. Axiomatically, therefore, it is not a "document dump," and it is not "padded" to prevent discovery of relevant information.

### B. The Entire Production is Searchable, Fully Indexed, and Can Be Filtered.

Next, these carefully-chosen materials were hardly "dumped" on the Defendants. As Defendant Beach finally concedes in his fifth footnote, the entire production is text-searchable. (Mot. at 13 n.5). In the body of his Motion, however, Defendant Beach falsely claims that the government "never provided Defendant Beach with any … other tools or assistance with respect to the voluminous set of documents that the Government has dropped on Defendant Beach in a classic document dump scenario." Mot. at 14.

He is incorrect. First, Defendant Beach fails to tell the Court that the government consulted with the Defendants prior to its initial discovery production to ascertain whether the Defendants had access to a document review database that would facilitate their review of the discovery. Each of the Defendants responded that they intended to use such a database. With that information, the government provided its discovery in a searchable format that was compatible with the Defendants' database software. In a hearing on December 4, 2018, the government was able to verify that all of the Defendants are actively using a database service called "Relativity."

Because the documents were produced in a database-friendly form, they can be both searched *and* filtered. That is, the Relativity database can filter documents by type, so that the Defendants can focus on (for example) emails rather than spreadsheets. The emails can themselves be filtered based on sender, recipient, date sent, subject line, or any keyword search in the text. By way of hypothetical example, if the Defendants wanted to review all emails containing the word "compounding," which were sent between Defendant Beach and Defendant Hope Thomley between January 1 and January 31, 2015, the government's production allows them to apply those filters and review only that evidence. Likewise, if the Defendants want to eliminate junk mail and ads, they can filter *out* emails from certain senders like LinkedIn or Amazon. Because the government produced the documents in a format compatible with the Relativity database, the Defendants can create any number of categories within Relativity to "tag" or organize the documents as they review them. For example, they could tag documents as "hot," "exculpatory," relevant to "pharmacy" or "marketing" or "formulation." They could search and tag documents related to specific witnesses, topics, or dates.

Moreover, not only are the *electronic* documents available to the Defendants in this format, but so are each and every one of the *Hard Copy Documents* the government collected from those three search sites. There is, of course, no requirement that the government scan every hard copy document collected in its search. It could have required the Defendants' attorneys to travel to Hattiesburg to review those documents in person at a secure FBI location at the mutual convenience of the FBI and the defense attorneys. Instead, the government has scanned 171 boxes of documents at its own expense, made each document text-searchable, and individually labeled every single *page* of those Hard Copy Documents with the (1) box number in which they were collected; and (2) the text of any label written on the file folder in which they were originally

located at the pharmacy or office where they were found. Defendant Beach makes no mention of this accommodation.

Defendant Beach further fails to inform the Court that the text-searchable production is also *indexed* (the "Production Index"). The Production Index is vitally important to the analysis. It is a Microsoft Excel spreadsheet in which the government has—line by line—individually listed every email, every Hard Copy Document, every recording, every interview report, every bank record, every subpoena return, and every other document produced to the Defendants in this case that are not located on the imaged Electronic Evidence.[4]

This Production Index is not only text-searchable, but it can also be filtered. So, for example, if the Defendant wanted to locate documents collected from a company called Express Scripts (ESI),[5] then he can do that by simply filtering the Production Index the government provided for documents relating to Express Scripts or ESI, and looking up the relevant *Bates* numbers from the resulting list.[6] Moreover, each time the government supplemented its production, it included an updated Production Index, on which the newly-produced documents are highlighted in yellow so that the Defendants can easily identify them.

The government has also taken other measures to make the production more navigable, which go unmentioned by Defendant Beach. For example, the government has produced approximately 50 consensual recordings; that is, audio or video files created by persons working

---

[4] The Electronic Evidence was returned to the defendants as "EO1 images." These hard drive image files allow the defendants to review the evidence organized in exactly the same way in which it was stored at the original search site.

[5] The government selected Express Scripts for this example because this Defendant recently subpoenaed Express Scripts, which indicates the Defendant may have an interest in those documents.

[6] At the Honorable Judge Starrett's request, the government gave an in-court demonstration of this index on December 4, 2018, and is prepared to show this Court a similar demonstration at the Court's convenience.

with the government who recorded conversations with the Defendants. Although there is no obligation that the government transcribe these recordings, the government has done so here. Moreover, the government has produced each and every transcript to the Defendants in text-searchable format so that they can be searched and reviewed more easily.

Likewise, the government has produced several cell phone images. These image files are large and can be difficult to navigate. But to make navigation easier, for each phone, the government has also produced a PDF "report;" that is, a text-searchable document that indexes each and every file on the phone, and reproduces the text messages located on the phone. With this accommodation, searching an entire cellular phone image is now as easy as opening a single PDF document and either (1) using "Ctrl-F" to look for key words or (2) paging through the whole document, as desired.

There certainly is a lot of evidence in this case, and the issues are varied and complex. But the Defendants' attorneys are competent and familiar with litigating complex cases. Indeed, this combination of complexity and competence means that reasonable minds may differ in good faith on which documents are "hot," exculpatory, or even relevant. But the government absolutely has not "dumped" the production on the Defendants. On the contrary, it has (1) consulted with the Defendants about the production format they prefer; (2) provided every single document in text-searchable format; (3) *Bates* labeled every single page; and (4) provided a document-by-document Production Index and other text-searchable "shortcuts" such as transcripts and cell phone reports to enable review. As it prepares for trial, the government is constantly reviewing the file to ensure all relevant documents are produced, and it has certainly not withheld or buried any *Brady* material as the Defendants charge.

### C. The Jason May Email Was Not Suppressed.

Defendant Beach makes much of a single email written by cooperating witness Jason May in November 2016 (the "Jason May Email"), which it claims is *Brady* whose treatment was suspect. With regard to that email, these are the facts: Part of the government's production was approximately 250 interview reports, which have been produced on a rolling basis.[7] These interview reports are also indexed in the Production Index by witness name and interview date. Thus, the Defendants can look at a list of the reports, and prioritize their review based on their own knowledge of the witnesses in this case.[8]

Several of the reports produced to the Defendants memorialize interviews of Jason May, the pharmacist-in-charge of Advantage Pharmacy, who has pled guilty and has testified at a previous trial. One particular report states that agents asked May about an email he had written. Below is an excerpt of the report, which was voluntarily produced to the Defendants on July 31, 2018:

> 55. In a prior email sent by MAY on 11/23/16 (see Attachment A), MAY stated that he did '*not think for a moment that either Hope nor Doyle believed that it was wrong to pay commissions on Tricare claims*'. When specifically asked about this, MAY responded that he felt that way at the time; however, now that he knows more about THOMLEY and BEACH, he believes that THOMLEY and BEACH were aware that a bunch of the things they were doing at ADVANTAGE were illegal.

When the government produced the report, it inadvertently produced an electronic version that did not have "Attachment A" scanned and attached. As is common in large-production civil

---

[7] As the government prepares for trial and learns about the defense theories through motion practice, it will continue to produce reports of those interviews of relevance to the case.
[8] Many of the witnesses are co-workers of the Defendants themselves, or frequent prescribers of the medications; the names will be familiar to the Defendants.

and criminal cases, Defendant's counsel emailed the government's counsel asking where to find Attachment A – the November 23, 2016 email by Jason May. The government immediately investigated, realized it was not attached to the report, and re-produced the report including the attachment *the very next morning*.

Defendant Beach complains that the attachment was produced "in partially redacted form," (Mot. at 2), without further explaining to the Court which portions were redacted. In reality, *no part of Jason May's email was redacted.* Instead, the redactions obscured only the relatively mundane correspondence on either side of Jason May's email. That is, the federal agent had asked Jason May for certain information, and that "ask," (along with the agent's contact information) had been redacted. Likewise, the transmission email sending Jason May's email to the agent had been redacted. Jason May's email itself was entirely intact.[9] Nonetheless, the government tracked down and produced an unredacted version to the Defendant.

## III.   Legal Standard and Argument

Defendant Beach's argument is contradictory and confusing. He repeatedly tells the Court that the government has "not provided Defendant Beach with any *Brady* material whatsoever" (Mot. at 5); *See also id* (the government has failed "to provide Defendant Beach with exculpatory and impeachment materials in the Government's possession."); *id* at 15 (accusing the government of "reluctance to produce *Brady* material to Defendant Beach"). These are, of course, false accusations. The government did not surgically excise every single potentially exculpatory

---

[9] At pages 4-5 of the Motion, the Defendant discusses the portion of the Jason May Email that he believes was exculpatory. Specifically, he states the email was exculpatory because Jason May "unequivocally asserted that Defendant Beach and Defendant Hope Thomley did not do anything wrong and why they did not believe they were doing anything unlawful. Moreover … May discussed the extreme and challenges in complying with complex laws and regulations …" None of these "exculpatory" portions were redacted. Indeed, most of this material was included in the report of the interview, which was produced in the first place.

document from all of the computer images, boxes of Hard Copy Documents, and subpoena returns; nor has it somehow redacted any and all potentially exculpatory portions of audiovisual recordings and interview reports. The government is not in possession of a secret file marked "*Brady* Material*,*" which it refuses to turn over. As Defendant Beach well knows, the government has instead turned over entire computer images, and every single document collected from the search sites of relevance to these Defendants.

Accordingly, the government believes that Defendant Beach inartfully intends to argue that the government has not *specifically identified* materials in the existing production that may be viewed as exculpatory.[10] Defendant Beach asserts, "where the Government effectively engages in the practice of 'document dumping,' the Government may be compelled to identify specific Brady materials within an existing document production." (Mot. at 9). He then asks the Court to follow a 1975 ruling from a District Court in Georgia. Mot. at 11, *citing Emmitt v. Ricketts*, 397 F. Supp. 1025, 1043 (N.D. Ga. 1975). In so doing, Defendant Beach asks this Court to ignore controlling Fifth Circuit law.[11]

The overwhelming law of this Circuit is that, "[a]s a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009) *aff'd in part, rev'd on other grounds by Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Mhamat*, 106 F.3d 89, 94 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's *Brady* obligations

---

[10] In footnote 1, for example, Defendant Beach more clearly states that the "Government has failed to *designate* a single document as *Brady* material." (emphasis added).

[11] The government put Defendant Beach on notice of the law of this circuit, which he ignores in his Motion. In an email with Defendant Beach's counsel, the government explicitly stated "[w]e are not required to take any position on whether the email you identified is Brady or not." This email from the government was not included in the myriad emails Defendant Beach attached to his Motion. They are attached hereto as Exhibit A, in order to complete the record.

require it to point the defense to specific documents within a larger mass of material that it has already turned over.") *abrogated on other grounds by United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004) (en banc).

Defendant Beach points to no law of this Circuit that requires the government to specifically designate a list of *Brady* documents as the Defendant requests. This is because the government simply "is not required…to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (internal quotation marks omitted).

Defendant Beach admits he is an owner and/or operator of Advantage Pharmacy and AMI Pharmacy – two of the three search sites at issue. Doc. 135 at 7. Accordingly, he "knows or should know of the essential facts that would enable him to take advantage of" the evidence produced to him. *See Id.* at 245-46. Defendant Beach's intimate familiarity with the evidence further absolves the government from playing "the impossible role of soothsayer" that must predict what the Defendant might find to be exculpatory. *See Harris v. United States,* 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998); *Skilling*, 554 F.3d at 576-77 ("[The defendant] contends that the government should have scoured the open file in search of exculpatory evidence to provide to him. Yet the government was in no better position to locate any potentially exculpatory evidence than was [the defendant]."); *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005) ("*Brady* does not compel the government to furnish a defendant with information he already has or, with any reasonable diligence, he can obtain himself." (internal quotation marks omitted); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("The defendants next argue that the government shrugged off its obligations under *Brady* by simply handing over millions of pages of evidence and forcing the defense to find any exculpatory information contained therein.  In essence, the defendants contend

that the government was obliged to sift fastidiously through the evidence—the vast majority of which came from [the defendant's company]—in an attempt to locate anything favorable to the defense. This argument comes up empty.")

Because of this overwhelming law, the Fifth Circuit joins other courts in routinely denying requests exactly like the one that Defendant Beach makes here. *See, e.g., United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (holding that *Brady* does not require the prosecution to "direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence."); *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997) (holding that the government's *Brady* obligations do not require it to "point the defense to specific documents within a larger mass of material that it has already turned over" (internal quotation marks omitted)); *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) ("While the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case."); *United States v. AU Optronics Corp.*, No. 09-cr-1110, 2011 WL 6778520, at *2 (N.D. Cal. Dec. 23, 2011) ("Defendants have made no showing that the government has used its production as a means of concealing *Brady* material. Further, the defendants here are well-resourced, have interests that are largely aligned, and perhaps most importantly, have the benefit of years of participation in the civil cases. Accordingly, the Court rejects defendants' contention that the government must affirmatively identify the location of *Brady* material within its production."); *United States v. Bermingham*, Crim. No. 02-597, 2007 WL 1052600, at *8 (S.D. Tex. Apr. 5, 2007) ("The Government is not required to identify evidence from out of its production to Defendants that may be broadly supportive of Defendants."); *United States v. McGill*, No. 12-cr-112, 2016 WL 48214,

at *9-10 (E.D. Pa. Jan. 5, 2016) (denying the defendant's motion to specifically disclose *Brady* and *Giglio* material and recognizing that the defendant was not detained and was available to assist defense counsel with the review of the evidence).

The Defendant fails to direct the Court to the above-cited controlling law, and instead mischaracterizes a single Fifth Circuit case: *Skilling v. United States, supra.* But in *Skilling,* the Fifth Circuit examined a voluminous discovery production, and joined the weight of authority in *not* requiring the government to provide any further information in order to discharge its *Brady* obligation. *See Skilling,* 554 F.3d 577. Defendant Beach cites *Skilling* for his proposition that the government "may be compelled," in an open-file case, "to identify specific Brady materials within an existing document production." Mot. at 9.

The *Skilling* court said no such thing. Instead, the *Skilling* court suggested without holding that an indiscriminate "document dump" might not satisfy *Brady* if the government also "padded an open file with pointless or superfluous information to frustrate a defendant's review of the file" or "creat[ed] a voluminous file that is onerous to access." *Skilling,* 554 F.3d at 577. The *Skilling* court did not suggest the government would ever be required—as Defendant Beach requests here—to specifically identify each and every potentially exculpatory document in a large, electronic production.

In short, there is simply no rule of law requiring the government to comprehensively identify *Brady* material in the format a defendant specifies, and the Defendant identifies none. *See Warshak*, 631 F.3d at 274 ("The district court did not abuse its discretion by failing to order the government to provide discovery in a different format, as Federal Rule of Criminal Procedure 16 is silent on the issue of the form that discovery must take."); *see also United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("The

Government is under no general obligation to sort or organize *Brady* material disclosed to defendants.") *citing Skilling*, 554 at 576. If the rule were otherwise, it would "place prosecutors in the untenable position of having to prepare both sides of the case at once." *Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d at 454.

Second, this case does not resemble the hypothetical, padded open-file scenario that *Skilling* envisions. The government has substantially narrowed down its production from a much larger investigative file. The production has been tailored to identify the documents of particular relevance to these Defendants. The *Skilling* court's concern about open file discovery relates to a situation in which the government "drop[s] several hundred million pages on [the defendant's] doorstep" without further assistance. *Skilling,* 554 F.3d at 577. Here, the government has provided the documents in searchable form, scanned all of the Hard Copy Documents, indexed each and every document produced, and has returned entire computers in the form of intact image files for ease of review.

In short, the government's efforts in this case have gone far above and beyond what is required. *United States v. Simpson*, No. 09-cr-249, 2011 WL 978235, at **8-9 (N.D. Tex. Mar. 21, 2011) (rejecting defense motion to require production of searchable database and index for 200 terabytes of data, where government had provided searchable copies of certain documents and had suggested where the defense could direct its efforts); *United States v. Dunning*, No. 07-cr-1390, 2009 WL 3815739, at *1 (D. Ariz. Nov. 12, 2009) (rejecting defense motion to require government to identify exculpatory material on 22 hard drives produced to the defense because the government had no "separate duty to extract the data from the hard drives, organize it, and produce it for the convenience of the Defendant").

Further, as in *Skilling,* there is "no evidence that the government found something exculpatory but hid it in the open file with the hope that Skilling would never find it." Defendant Beach makes much of the "Jason May Email," which was an attachment inadvertently left off of an interview report memorializing an interview of witness Jason May. As the Defendant concedes, the report itself was produced without incident. In that (produced) report, the omitted email/attachment was quoted and discussed as shown above. That is, the very information the Defendant characterizes as *Brady* was actually included in the report itself—there was no attempt to suppress or hide it. The report was easy to find in the production—it was indexed in the Production Index, and highlighted in yellow as a newly-produced document. The government then provided the attachment within 24 hours of Defendant Beach's request for it.[12]

## IV. CONCLUSION

Accordingly, because Defendant Beach's motion has no basis in law or fact, the Court should follow the precedent set by numerous courts in this Circuit and others, and **DENY** Defendant Beach's motion in its entirety.

Dated: December 7, 2018               Respectfully submitted,

                                      D. MICHAEL HURST, JR.
                                      UNITED STATES ATTORNEY

                                By:   s/ Katherine Payerle

                                      Mary Helen Wall (MS Bar #100857)
                                      Assistant United States Attorney
                                      501 E. Court Street, Suite 4.430
                                      Jackson, Mississippi 39201-0101

---

[12] Judge Starrett heard the Defendant's entire argument about the Jason May Email during the hearing of December 4 and the government's response. Although he stated he did not intend to interfere with the Court's decision on these discovery motions, Judge Starrett did specifically find—in the context of his decision on the Thomley Defendants' Motion to Continue—that there had been no government misconduct in the discovery process.

Telephone: (601) 965-4480
Fax: (601) 965-4409
mary.helen.wall@usdoj.gov

Katherine E. Payerle (NC Bar #36897)
Jared L. Hasten (IL Bar #6296695)
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C. 20005
Telephone: (202) 816-9269
katherine.payerle@usdoj.gov
jared.hasten@usdoj.gov

**CERTIFICATE OF SERVICE**

      I, Katherine Payerle, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of interest.

      On this, the 7th day of December, 2018.

                                                  s/ Katherine Payerle
                                                  Katherine Payerle
                                                  Trial Attorney