# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **CRIMINAL CASE NO. 2:18-CR-18-KS-MTP**

**HOPE EVANGULANE THOMLEY,** *et al.*


### MEMORANDUM OPINION AND ORDER

The Court briefly described the background of this case in its Order of November 14, 2018. *See* Order at 1, *United States v. Thomley*, No. 2:18-CR-18-KS-MTP (S.D. Miss. Nov. 14, 2018), ECF No. 145. Defendant Glenn Doyle Beach filed a Motion to Dismiss [105] the indictment, challenging its sufficiency. In broad terms, Defendant's arguments can be grouped into three basic categories: 1) Defendant contends that the Government did not allege sufficient factual details to support the charges, 2) Defendant contends that the activity described in the charges is not actually illegal, and 3) Defendant contends that the indictment is multiplicitous, charging a single offense in multiple counts.

Defendant is mistaken as to the degree of factual detail the Government is required to include in the indictment. As demonstrated below, each count is legally sufficient, meeting the requirements of Rule 7 and applicable case law. Moreover, Defendant wholly ignores that otherwise legal actions can lead to criminal liability if done in pursuit of a criminal conspiracy. Finally, the Court finds that the indictment is not multiplicitous. For the reasons provided herein, the Court **denies** Defendant's

Motion to Dismiss [105] the indictment.

## A.    *Standard of Review*

First, Defendant challenges the sufficiency of the indictment. The Rules of Criminal Procedure require than an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." FED. R. CRIM. P. 7(c)(1). When reviewing the sufficiency of an indictment, the Court takes its allegations as true. *United States v. Ratcliff*, 488 F.3d 639, 643 (5th Cir. 2007). "An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014).

The Government is not required to "allege in detail the factual proof that will be relied upon to support the charges." *United States v. Caldwell*, 302 F.3d 399, 412 (5th Cir. 2002). In fact, "[a]s a general rule, an indictment which alleges an element of the charged offense merely by reciting the words of the applicable statute is valid so long as the indictment alleges each of the requisite elements of the charged offense." *United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982).

## B.    *Count 1 – 18 U.S.C. § 1349*

In Count 1, the Government charged Defendants with conspiring to commit wire fraud and health care fraud. "The elements of a conspiracy under 18 U.S.C. § 1349 are: (1) two or more persons made an agreement to commit an unlawful act; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined

in the agreement willfully, with the intent to further the unlawful purpose." *Simpson*, 741 F.3d at 547. The elements of a conspiracy can be inferred from circumstantial evidence. *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014). For example, an agreement can be inferred from concert of action, *United States v. Dailey*, 868 F.3d 322, 329 (5th Cir. 2017), and knowledge can be inferred from surrounding circumstances. *Willett*, 751 F.3d at 339. Every conspirator need not participate in every aspect of the scheme; rather, each must only "willfully participate[] in a scheme to defraud with the intent that the scheme's illicit objectives be achieved . . . ." *United States v. Tencer*, 107 F.3d 1120, 1127 (5th Cir. 1997).

The elements of wire fraud are: "(1) a scheme to defraud; (2) the use of, or causing the use of, wire communications in furtherance of the scheme; and (3) a specific intent to defraud." *United States v. Kuhrt*, 788 F.3d 403, 413-14 (5th Cir. 2015) (citing 18 U.S.C. § 1343; *Simpson*, 741 F.3d at 547-48).

Finally, the elements of health care fraud are: "(1) the defendant executed a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) the defendant acted knowingly and willfully with a specific intent to defraud; and (3) the scheme to defraud employed false representations." *United States v. Garcia*, 432 F. App'x 318, 322 (5th Cir. 2011) (citing *United States v. Hickman*, 331 F.3d 439, 443-45 (5th Cir. 2003)).

In Count 1, the Government alleged that Defendants conspired and agreed to commit wire fraud and health care fraud from approximately April 2012 through

January 2016 in Lamar County, Mississippi. Indictment at 8-9, *United States v. Thomley*, 2:18-CR-18-KS-MTP (S.D. Miss. May 15, 2018), ECF No. 4. The Government recited the precise elements of the wire fraud statute, *id.* at 9 (citing 18 U.S.C. § 1343), and the health care fraud statute. *Id.* at 9 (citing 18 U.S.C. § 1347). The Government further alleged:

> It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (b) submitting and causing the submission of claims to health care benefit programs based upon materially false and fraudulent pretenses, representations, and promises; and (c) concealing the submission of false and fraudulent claims to health care benefit programs.

*Id.* The Government then provided numerous specific factual allegations regarding the manner and means by which Defendants, including Beach, sought to accomplish the objects and purpose of the conspiracy. *Id.* at 10-14.

Specifically, the Government alleged that Beach "identified, promoted, and mass-produced formulations of compound medications that health care benefit programs, including TRICARE, would reimburse at particularly high rates . . . , regardless of the individual medical needs of the beneficiaries or the effectiveness of the High-Yield Compounded Medication." *Id.* at 10. The Government also alleged that Beach instructed his agent and co-conspirator Jason May "to run 'test' or 'dummy' claims with health care benefit programs to determine how much health care benefit programs would reimburse for the formulas." *Id.* In other words, Beach allegedly had his agents submit fake claims on behalf of real patients to figure out how to maximize

the profit on the fraudulent medications. Then Beach and his co-conspirators would mass-produce the High-Yield Compounded Medications before any health care provider had prescribed them or even identified a patient in need. *Id.* at 10-11.

The Government alleged that Defendants produced pre-printed prescription forms to give health care providers, in case of an audit by a health care benefit program. *Id.* at 11. The Government also alleges that Beach directed marketers to include more medication than necessary in compounds so that the reimbursement rates would be greater, regardless of the patients' legitimate medical needs, and that Defendants "devised a number of bribery and kickback schemes to provide remuneration to marketers and prescribers who prescribed High-Yield Compounded Medication and to beneficiaries who accepted it." *Id.* Accordingly, health care providers prescribed the High-Yield Compounded Medications regardless of the medical needs of their patients, in exchange for kickbacks and bribes, and often without even examining the patients. *Id.*

According to the Government, Advantage Pharmacy – of which Defendant Beach owned an interest – dispensed the High-Yield Compounded Medications and submitted claims to the patient's health care benefit program. *Id.* at 12. On behalf of Advantage Pharmacy, Beach allegedly agreed to "collect copayments from beneficiaries without reducing or waiving" them, so that the health care benefit programs would reimburse the claims submitted by Advantage Pharmacy. *Id.* at 12-13. But Defendants conspired to "waive and reduce the copayments for the beneficiaries, including TRICARE

beneficiaries, while making it appear to health care benefit programs . . . that the copayments were being collected" because they knew that patients would refuse the High-Yield Compounded Medications if they had to pay the full copayments. *Id.* at 13.

Advantage Pharmacy's contract with Pharmacy Benefit Managers ("PBM's") was eventually terminated for "poor audit performance and other issues," and it was prohibited by law from dispensing the High-Yield Compounded Medications. *Id.* So, Defendants then used another entity, Advantage Medical Infusion, to dispense the medications. *Id.* Defendants allegedly concealed their interest in Advantage Medical Infusion while continuing to receive much of its revenue. *Id.* The Government specifically alleges that Beach maintained control over Advantage Medical Infusion's bank accounts, but he represented to the Mississippi Secretary of State that he was no longer part of the business and requested that his name be removed from the annual reports. *Id.* at 13-14. Defendants allegedly continued the same fraudulent scheme through Advantage Medical Infusion after Advantage Pharmacy's contract with PBM's was rescinded. *Id.* at 14.

These allegations are legally sufficient. The Government described the essential elements of the charged offense with particularity, and there is sufficient information to protect Beach from prosecution for the same crime in the future. That is all Rule 7 and the applicable case law requires. *See* Fed. R. Crim. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 1.

Beach argues that the Government did not allege sufficient facts to demonstrate

that he agreed or conspired with the Thomleys. As noted above, the Government alleged that Defendants conspired and agreed to commit wire fraud and health care fraud from approximately April 2012 through January 2016 in Lamar County, Mississippi – reciting the precise elements of the applicable statutes. Indictment [4], at 8-9. "[A]n indictment which alleges an element of the charged offense merely by reciting the words of the applicable statute is valid so long as the indictment alleges each of the requisite elements of the charged offense." *Williams*, 679 F.2d at 508. Moreover, the Government alleged numerous details about the purpose, manner, and means of the conspiracy, from which one may reasonably infer an agreement among Defendants. *See Willett*, 751 F.3d at 339; *Dailey*, 868 F.3d at 329.[1]

Beach also argues that it is not illegal to formulate, produce, market, and prescribe High-Yield Compounded Medications; to run "test" or "dummy" claims; to submit claims to health care benefit programs; or to use multiple corporate entities in a business enterprise. But these were allegedly the manner and means Defendants used to accomplish the conspiracy's illicit goals. In other words, Beach completely ignores the alleged purpose and effect of these actions: to commit wire fraud and health care fraud.[2]

---

[1]Defendant makes the same argument concerning knowledge and intent throughout briefing. The Court is not going to separately address it each time. The same reasoning articulated here applies to each count.

[2]Again, Defendant makes the same argument throughout briefing as to various facts supporting each count. The Court is not going to separately address it each time. The same reasoning articulated here applies across the board.

*C.*   *Counts 4, 5, and 6 – 18 U.S.C. § 1347*

Next, Beach argues that Counts 4, 5, and 6 are insufficient because they do not provide enough specific facts about the charged crimes. Specifically, he argues that the Government 1) failed to allege any facts demonstrating that he knew the claims were fraudulent, 2) failed to allege a specific victim, 3) failed to allege the specific health care benefit program to which the claims were submitted, and 4) failed to specify how the claims were false or fraudulent.

In Counts 4, 5, and 6, the Government incorporated all prior relevant allegations.[3] It also alleged that Beach committed health care fraud in violation of 18 U.S.C. § 1347. As noted above, the elements of health care fraud are: "(1) the defendant executed a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) the defendant acted knowingly and willfully with a specific intent to defraud; and (3) the scheme to defraud employed false representations." *Garcia*, 432 F. App'x at 322.

In Counts 4, 5, and 6, the Government alleged that Defendant Beach "did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in" 18 U.S.C. § 24(b), "and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program." Indictment [4], at 15. Each count

_____

[3]The Government incorporated all prior relevant allegations in every count. Accordingly, as the Court addresses each count, it will consider all prior allegations.

describes a specific transaction, and the Government provided the beneficiary's initials, the prescription number, the date the claim was submitted for payment, and the amount paid. *Id.*

These allegations are legally sufficient. The Government described the essential elements of the charged offense with particularity, and there is sufficient information to protect Beach from prosecution for the same crime in the future. That is all Rule 7 and the applicable case law requires. *See* FED. R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Counts 4, 5, and 6.

## D. Count 14 – 18 U.S.C. § 371

Next, Beach argues that Count 14 is insufficient because the Government did not provide enough specific facts about the conspiracy. Specifically, he argues that the Government 1) failed to define the term "kickback" or identify the actions which constituted the alleged kickbacks, 2) failed to explain how the marketing agreement between Advantage Pharmacy and Total Care Marketing was illegal, 3) failed to allege facts demonstrating that he knew the marketing contract was illegal, 5) failed to allege facts demonstrating that he paid any bribes to patients or physicians, 6) failed to allege that he knew any bribes had been paid to patients or physicians, 7) failed to allege the "routine" waiver of patient copayments, and 8) failed to specify the amount of alleged kickbacks.

In Count 14, the Government alleged that Defendants knowingly conspired and agreed to commit violations of the Anti-Kickback Statute ("AKS"). "To support a conspiracy conviction under 18 U.S.C. § 371, the government must prove three

elements: (1) an agreement between two or more people to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the conspirators in furtherance of the conspiracy's objective." *United States v. Fisch*, 851 F.3d 402, 406-07 (5th Cir. 2017).

The AKS criminalizes the knowing and willful solicitation or receipt of any remuneration

> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(1)(A)-(B). Likewise, the AKS forbids offering or paying any remuneration to a person to induce them

> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(2)(A)-(B).

The Government alleged that Defendants knowingly conspired and agreed to commit violations of the AKS. Indictment [4], at 17-18. According to the Government,

the conspiracy's unlawful objective was for Defendants

> . . . to unlawfully enrich themselves by (1) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for recommending High-Yield Compounded Medication to be dispensed to TRICARE beneficiaries by Advantage Pharmacy, and (2) submitting and causing the submission of claims to TRICARE for High-Yield Compounded Medication procured by kickback payments.

*Id.* at 18. The Government listed numerous overt acts in furtherance of the conspiracy. *Id.* at 18-20. It specifically alleged that Beach and Hope Thomley "signed an agreement whereby Advantage Pharmacy agreed to pay Total Care Marketing remuneration in exchange for referring prescriptions, including for TRICARE beneficiaries, to be filled at Advantage Pharmacy." *Id.* at 18. The Government also specifically alleged that Beach paid kickbacks to TRICARE beneficiaries by "covering their copayments in whole or in part." *Id.* at 19. Additionally, the Government alleged that Beach signed a check from Advantage Pharmacy to Total Care Marketing for $3,776,424.34 on September 25, 2014, and that some of the funds "constituted remuneration for referring TRICARE beneficiaries to Advantage Pharmacy." *Id.*

These allegations are legally sufficient. The Government described the essential elements of the conspiracy, and it precisely tracked the statutory language for the underlying substantive offenses. Additionally, it listed numerous overt acts in furtherance of the conspiracy, including acts by Beach himself. This is enough to satisfy Rule 7 and applicable case law. *See* FED. R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 14.

**E.     *Count 15 – 42 U.S.C. § 1320a-7b(b)***

Next, Beach challenges the legal sufficiency of Count 15. Specifically, he argues that 1) the Government failed to allege the amount of the alleged kickback, 2) the Government failed to allege that he knew the alleged payment and the marketing contract he entered with Hope Thomley were illegal, 3) the Government failed to explain how the alleged payment was illegal, 4) commission payments to sales representatives are not illegal, 5) he did not have the requisite intent to induce referrals.

In Count 15, the Government alleged that Beach "knowingly and willfully offered, paid, solicited and received remuneration, that is kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring TRICARE beneficiaries to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under" TRICARE. Indictment [4], at 20-21. Specifically, the Government alleges that Beach signed a check on September 25, 2014 from "Advantage Pharmacy to Total Care Marketing in exchange for referring beneficiaries – including TRICARE beneficiaries – to Advantage Pharmacy," in the amount of $3,776,424.34. *Id.* at 21.

These allegations are legally sufficient to charge Beach under 42 U.S.C. § 1320a-7b(b). The Government alleged that he knowingly and willfully paid remuneration to a person in exchange for referring TRICARE beneficiaries for the furnishing of High-Yield Compounded Medications for which payment may be made in whole or in part by TRICARE. Moreover, the Government identified a specific payment by amount, date, and recipient. This is enough to satisfy Rule 7 and applicable case law. *See* FED.

R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 15.

**F.      Count 24 – 18 U.S.C. § 1956(h)**

Next, Beach challenges the legal sufficiency of Count 24. Specifically, he argues that 1) the Government failed to allege an agreement between him and the other Defendants; 2) the Government failed to allege that he knowingly participated in a conspiracy; 3) the Government failed to allege that he had the requisite knowledge or intent; and 4) the Government failed to allege sufficient factual details, such as who filed the subject tax returns, when they were filed, what fraudulent representations were made, and which companies constituted "shell companies."

In Count 24, the Government alleged that Beach violated 18 U.S.C. § 1956(h) by "knowingly and intentionally conspir[ing] and agree[ing] . . . with other persons" to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.S.C. § 1956(a)(1)(B)(i), and 18 U.S.C. § 1957. Indictment [4], at 27-30. "To establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Cessa*, 785 F.3d 165, 173 (5th Cir. 2015).

The substantive money-laundering statute requires the Government to prove the following elements:

> (1) [Defendants] conducted a financial transaction; (2) which [they] knew
> involved proceeds arising from a specified unlawful activity; (3) with the
> intent to promote or further those illegal actions ("the promotion prong");

13

> *or* (4) with the knowledge that the transaction's design was to conceal or disguise the nature or source of the illegal proceeds ("the concealment prong").

*United States v. Valdez*, 726 F.3d 684, 689 (5th Cir. 2013) (citing 18 U.S.C. § 1956(a)(1)). The promotion prong requires proof that "the defendant: (1) conducted or attempted to conduct a financial transaction, (2) which the defendant then knew involved the proceeds of unlawful activity, (3) with the intent to promote or further unlawful activity." *United States v. Stanford*, 823 F.3d 814, 849 (5th Cir. 2016) (quoting *United States v. Brown*, 553 F.3d 768, 782 (5th Cir. 2008)). The concealment prong requires proof that "the dirty money transactions are 'designed . . . to conceal or disguise the nature, location, the source, the ownership, or the control' of the money involved." *Valdez*, 726 F.3d at 689 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)).

The Government specifically alleged that from December 2013 through January 2016, Defendants knowingly and intentionally conspired and agreed to issue and deposit checks and initiate wire transfers, which involved the proceeds of health care fraud and violations of the AKS, for the purpose of concealing and disguising the nature, location, source, ownership, and control of the proceeds. Indictment [4], at 27-28. To be clear, the Government specifically alleged that each Defendant knew the property involved in the financial transactions represented the proceeds of an unlawful activity. *Id.* at 28.

The Government also alleged that Defendants knowingly and intentionally conspired and agreed to conduct and attempt to conduct a financial transaction involving the proceeds of unlawful activity (health care fraud, wire fraud, violations

of the AKS) for the purpose of "filing tax returns containing materially false statements in order to falsely claim deductions and underreport taxable income . . . ." *Id.* Again, the Government specifically alleged that each Defendant knew the property involved in the financial transactions represented the proceeds of an unlawful activity. *Id.* at 28-29.

Finally, the Government alleged that Defendants knowingly and intentionally conspired and agreed to "engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 . . . ." *Id.* at 29. Specifically, the Government contends that Defendants issued and deposited checks and initiated wire transfers of property derived from health care fraud, wire fraud, and violations of the AKS. *Id.*

The Government alleged that Defendants "directed the proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to accounts in the name of IPMS." *Id.* at 30. Defendant allegedly "commingled their funds in accounts in the name of IPMS . . . in order to obscure and conceal their ownership." *Id.* Each account was given a numeric label corresponding to a particular co-conspirator, "to further anonymize the control of the funds." *Id.* The Government also alleged that Defendants directed the proceeds of their schemes to accounts of IPMS "for the purpose of falsely claiming deductions and underreporting income on their federal

income taxes." *Id.* Defendants then allegedly "directed funds through the accounts of IPMS to shell entities used to further launder the funds, purchase real property, and benefit the defendants." *Id.*

These allegations are legally sufficient. The Government described the essential elements of the conspiracy to commit money laundering, it precisely tracked the statutory language for the underlying substantive offenses, and it alleged the manner and means by which Defendants sought to accomplish the objects of the conspiracy. This is enough to satisfy Rule 7 and applicable case law. *See* FED. R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 24.

## G.    *Count 25 – 18 U.S.C. § 1956(h)*

Next, Beach challenges the legal sufficiency of Count 25. Specifically, he argues that 1) the Government failed to allege an agreement between him and any alleged co-conspirators, and 2) the Government failed to allege that he committed any specific unlawful actions.

In Count 25, the Government alleged that Beach "knowingly and intentionally conspire[d] and agree[d]" with others to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1957. Indictment [4], at 31. The conspiracy's alleged purposes were "to conduct wire transfers and deposit checks representing the proceeds of health care fraud, wire fraud, and pay and receive health care kickbacks, to conceal and disguise the proceeds and obscure their nature, location, source, ownership, and control," and to "conduct transactions and purchases greater than $10,000 for the benefit of the defendants and co-conspirators." *Id.* at 32.

16

The Government alleged that Defendant and his co-conspirators "directed funds earned from Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks to an account under the control of" BNSMTW, LLC. *Id.* Beach, Hope Thomley, Jason May, and an unnamed co-conspirator from Hattiesburg, Mississippi, were members of BNSMTW. *Id.* at 6-7. BNSMTW then "dispersed said proceeds to accounts controlled by" Beach and his co-conspirators. *Id.* at 32. Also, Beach and his co-conspirators allegedly "directed the proceeds earned from Advantage Medical Pharmacy and Advantage Medical Infusion and derived from" the underlying illegal activity "to an account under his control in the name of" TLC RX, LLC, "to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from" the underlying illegal activity, "in part by investing said proceeds and using them to purchase real and personal property." *Id.* at 32-33. Beach was a member of TLC RX. *Id.* at 6. Finally, the Government alleged that Beach and his co-conspirators used N & P Farms, LLC and Bone Forest, LLC "to conceal and disguise, the nature, location, source, ownership, and control of the proceeds derived from" the underlying illegal activity. *Id.* at 33. Beach and Hope Thomley were members of Bone Forest, and Beach was a member of N & P Farms. *Id.* at 6.

These allegations are legally sufficient. The Government described the essential elements of the conspiracy to commit money laundering, it precisely tracked the statutory language for the underlying substantive offenses, and it alleged the manner

and means by which Beach and his co-conspirators sought to accomplish the objects of the conspiracy. This is enough to satisfy Rule 7 and applicable case law. *See* FED. R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 25.

## H.    *Count 28 – 18 U.S.C. § 1956(a)(1)(B)(i)*

Beach also challenges the legal sufficiency of Count 28. Specifically, he argues that 1) the Government failed to allege any illegal activity, 2) failed to allege that he knew the money was derived from illegal activity, and 3) failed to describe the relationships between the two entities or the nature of the transaction.

In Count 28, the Government alleged that Beach laundered money in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(2). Indictment [4], at 35. Specifically, the Government alleged that Beach "knowingly conduct[ed] and attempt[ed] to conduct a financial transaction affecting interstate and foreign commerce" involving the proceeds of health care fraud, wire fraud, and violations of the AKS, "knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity," and "knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." *Id.* Specifically, the Government alleged that Beach "issue[d] Check #1073 from an account at the Regions Bank ending in #8585 in the name of TLC RX to an account at Wells Fargo Bank ending in #6960 in the name of IPMS for $606,499.81 . . . ." *Id.*

These allegations are legally sufficient. The Government described the essential

elements of money laundering, precisely tracking the statutory language. It also alleged the amount, check number, banks, and account numbers involved in the specific transaction at issue. This is enough to satisfy Rule 7 and applicable case law. *See* FED. R. CRIM. P. 7(c)(1); *Simpson*, 741 F.3d at 547. The Court denies Beach's motion to dismiss Count 28.

## I.    *Multiplicity*

Beach also argues that some of the charges are multiplicitous. "Multiplicity is the charging of a single offense in several counts. The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Jones*, 733 F.3d 574, 584 (5th Cir. 2013). To determine whether an indictment is multiplicitous, the Court applies the *Blockburger* test. *United States v. Ogba*, 526 F.3d 214, 233 (5th Cir. 2008) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). The Court must determine whether each statute "requires proof of a fact which the other does not." *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017) (quoting *Albernaz v. United States*, 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)). The Court examines both the elements of the statutory crimes, and the offenses as charged. *Ogba*, 526 F.3d at 234; *Sanjar*, 876 F.3d at 737.

In conspiracy cases, the *Blockburger* analysis is "colored by the question of 'whether one, or more than one, agreement existed.'" *United States v. Cihak*, 137 F.3d 252, 258 (5th Cir. 1998) (quoting *United States v. Deshaw*, 974 F.2d 667, 669 (5th Cir.

1992)). To determine whether more than one conspiracy existed, the Court considers the following factors:

> (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*Id.* (quoting *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978)). No factor is determinative; they must be considered in combination. *Id.*

### 1. *Counts 1 and 14*

First, Beach contends that Counts 1 and 14 are multiplicitous. He argues that the Government can not charge under the general conspiracy statute of 18 U.S.C. § 371 and the specific conspiracy statute of 18 U.S.C. § 1349, citing *United States v. Mori*, 444 F.2d 240 (5th Cir. 1970).

As noted in the Court's previous opinion, *Mori* does not categorically forbid charging under both the general conspiracy statute and specific conspiracy statutes. Memorandum Opinion and Order at 10-11, *United States v. Thomley*, No. 2:18-CR-18-KS-MTP (S.D. Miss. Dec. 6, 2018), ECF No. 173. Rather, it forbids the Government from charging a single conspiracy under both the general statute, 18 U.S.C. § 371, and the specific statute addressing conspiracies to import narcotics, 21 U.S.C. § 174. *Mori*, 444 F.2d at 243-45. Moreover, the Fifth Circuit has explicitly held that an indictment charging a specific conspiracy under 18 U.S.C. § 1349 and a general conspiracy under 18 U.S.C. § 371 is not multiplicitous. *Sanjar*, 876 F.3d at 737 (citing *Jones*, 733 F.3d

at 584; *United States v. Njoku*, 737 F.3d 55, 68 (5th Cir. 2013); *United States v. Moran*, 778 F.3d 942, 964 (11th Cir. 2015)). Therefore, the Government may charge both a specific conspiracy to commit health care and wire fraud under 18 U.S.C. § 1349 and a general conspiracy to violate the AKS under 18 U.S.C. § 371.

The key issue is whether the Government charged a single conspiracy or multiple conspiracies. As noted above, *Blockburger* and *Marable* provide the applicable analysis. *See Albernaz*, 450 U.S. at 337 ("[T]he rule of statutory construction stated in *Blockburger* is to be used to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively."); *Cihak*, 137 F.3d at 258 (court applies *Marable* to determine whether one or multiple conspiracies were charged).

In Count 1, the Government alleged that Defendants conspired to commit wire fraud and health care fraud to enrich themselves and others by

> (a) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (b) submitting and causing the submission of claims to health care benefit programs based upon materially false and fraudulent pretenses, representations, and promises; and (c) concealing the submission of false and fraudulent claims to health care benefit programs.

Indictment [4], at 9. In Count 14, the Government alleges that Defendants conspired to violate the AKS.

To prove a conspiracy under 18 U.S.C. § 371, the Government must provide evidence of "an overt act by one or more of the conspirators in furtherance of the conspiracy's objective." *Fisch*, 851 F.3d at 406-07. Section 1349 does not require proof

of an overt act. *Simpson*, 741 F.3d at 547. Additionally, the substantive offenses underlying each conspiracy are different. *See United States v. Sharpe*, 193 F.3d 852, 863 (5th Cir. 1999) (when comparing two conspiracy counts for multiplicity analysis, court should examine the elements of the substantive offenses which were the objects of the conspiracies). Count 1 relates to a conspiracy to commit wire fraud and health care fraud, while Count 14 relates to a conspiracy to violate the AKS. To prove health care fraud, the Government must provide evidence of false claims submitted to a health care benefit program. *Garcia*, 432 F. App'x at 322. To prove wire fraud, the Government provide evidence that Defendants used or caused a wire transmission to be used in furtherance of the scheme. *Kuhrt*, 788 F.3d at 413-14. A conspiracy to violate the AKS does not require proof of either of these elements. Therefore, each conspiracy count requires proof of an element that the other does not.

Moreover, the facts alleged in support of each count are different. In Count 1, the Government alleged that Defendants conspired and agreed to commit wire fraud and health care fraud from approximately April 2012 through January 2016 in Lamar County, Mississippi. Indictment [4], at 8-9. The Government then provided numerous specific factual allegations regarding the manner and means by which Defendants, including Beach, sought to accomplish the objects and purpose of the conspiracy, which the Court recited in detail above. *Id.* at 10-14.

In Count 14, the Government contends that Defendants conspired to violate the AKS in Lamar County, Mississippi, from April 2012 through January 2016. *Id.* at 17.

Specifically, the Government alleged that Defendants conspired to offer, pay, solicit, and receive kickbacks and bribes in exchange for arranging and recommending that certain compounded medications be dispensed to TRICARE beneficiaries by Advantage Pharmacy, and to submit and cause the submission of claims to TRICARE for compounded medications procured by kickback payments. It listed ten different overt acts in furtherance of the alleged conspiracy.

In summary, each Count requires proof of an element that the other does not. Each alleged conspiracy occurred in the same location, at the same time, with the same co-conspirators. But the purposes, manner, and means of the alleged conspiracies are different. Moreover, the specific facts alleged in support of each Count are different. The Court concludes that the Counts 1 and 14 are not multiplicitous.

2.    *Counts 24 and 25*

Defendant also argues that Counts 24 and 25 are multiplicitous. In Count 24, the Government alleged that the Thomleys and Beach violated 18 U.S.C. § 1956(h) by conspiring to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.S.C. § 1956(a)(1)(B)(i), and 18 U.S.C. § 1957. In Count 25, the Government alleged that Beach violated 18 U.S.C. § 1956(h) by conspiring to violate 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1957.

As noted above, when conducting a *Blockburger* analysis of two conspiracy charges, the Court should consider the elements of the underlying substantive offenses. *Sharpe*, 193 F.3d at 863. The conspiracies described in Counts 24 and 25 share two objects: violations of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1957. Obviously, these

substantive offenses have the same elements. But the conspiracy alleged in Count 24 has an additional object: the violation of 18 U.S.C. § 1956(a)(1)(A)(i). When the Government charges multiple objects for a conspiracy, it is not required to prove every alleged object. *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006); *see also United States v. Barraza-Mena*, 647 F. App'x 319, 325 (5th Cir. 2016) (where Government alleged conspiracy to commit money laundering, it was not required to prove every object of the conspiracy). Therefore, Count 24 and Count 25 do not necessarily require proof of any element that the other does not. The Government could acquire a conviction on both counts by proving the same statutory elements.

The conspiracies described in Counts 24 and 25 had similar purposes. Count 24 describes an alleged conspiracy to conduct wire transfers and issue and deposit checks representing the proceeds of fraud and the payment and receipt of kickbacks for the purpose of obscuring their nature, location, source, ownership, and control, and to commit tax fraud. Count 25 describes a conspiracy "to conduct wire transfers and issue and deposit checks representing the proceeds of health care fraud, wire fraud, and pay and receive health care kickbacks, to conceal and disguise the proceeds and obscure their nature, location, source, ownership, and control." Indictment [4], at 32.

Each alleged conspiracy also occurred at approximately the same time. The conspiracy described in Count 24 began in December 2013 and continued through January 2016. The conspiracy described in Count 25 began in May 2013 and continued through January 2016. Therefore, the time period alleged in Count 25 is "encompassed wholly" by the time period alleged in Count 24. *Deshaw*, 974 F.2d at 674.

Both alleged conspiracies involved Beach as a "central character." *Id.* Although Hope and Randy Thomley were listed as co-conspirators in Count 24, the Court must be mindful that "the mere shuffling of actors in an otherwise ongoing operation with an apparent continuity will not, alone, suffice to create multiple conspiracies." *Id.*

Each Count describes similar crimes, involving the use of bank accounts and shell corporations to launder the proceeds of the broader health care fraud scheme. Count 25 alleges that the Beach "directed funds earned from Advantage Medical Infusion and derived from health care fraud, wire fraud, and paying and receiving health care kickbacks" to accounts controlled by BNSMTW, LLC, which dispersed the funds to accounts controlled by Beach and his co-conspirators. Indictment [4], at 32. The Government also alleges that Beach and his co-conspirators directed funds derived from similar illegal activity to an account controlled by TLC RX, LLC, which they used for investments and to purchase real and personal property, and that Defendants used two other entities – N & P Farms, LLC, and Bone Forest, LLC – to conceal and disguise the nature, source, location, ownership, and control of proceeds derived from illegal activity. *Id.* at 33.

Count 24 alleges that the Thomleys and Beach conspired to obscure the proceeds of fraud earned from Advantage Medical Pharmacy and Advantage Medical Infusion, and to commit tax fraud by transactions involving accounts under their control and owned by Intellectual Property Management Services, LLC ("IPMS"), IPMS Holdings, Series B, LLC; and IPMS Holdings, Series E, LLC.

In a hearing held on December 4, 2018, the Government explained the key

difference between the two counts. Count 24 particularly concerns use of the IPMS corporations to facilitate tax fraud by the sale and leaseback of certain alleged intellectual property. The Government contends that there is no intellectual property of any meaningful value, and that the transactions reflected on Defendants' tax returns were a sham for the purpose of concealing the source of Defendants' income and reducing their income tax liability.

In summary, Count 24 concerns similar activity to that alleged in Count 25, but it is wider in scope, including tax fraud as an additional purpose of the conspiracy. Each Count involves different shell corporations. Both alleged conspiracies occurred in the same time frame, in the same geographical area, with substantial overlap in their co-conspirators. The Government can obtain convictions on both counts by proving the same statutory elements. But the particular purpose and means of the conspiracy alleged in Count 24 – to commit tax fraud via intellectual property transactions – is barely enough to distinguish the two Counts, at least for now. Defendants are free to re-urge this issue as they learn more about the Government's case and analyze the evidence.

## J.  *Bill of Particulars*

Finally, Defendant argues that the Court should order the Government to file a bill of particulars providing more specific facts so that he can adequately prepare for trial. Rule 7 provides: "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." FED. R. CRIM. P. 7(f). The standard

the Court applies is "very similar to the criteria for the sufficiency of an indictment." *United States v. Hamlin*, 68 F.3d 469, 1995 WL 581833, *1 (5th Cir. 1995). "A bill of particulars is not required if a defendant is otherwise provided . . . with sufficient information to enable him to prepare his defense and avoid surprise." *Id.* (quoting *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991)). Likewise, "[a] bill of particulars is not appropriate if used for the purpose of obtaining a detailed disclosure of the government's evidence prior to trial." *Id.* (citing *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978)).

For the same reasons provided above, the Court finds that the indictment contains sufficient information – particularly when paired with the evidence already produced in this case, including the Government's reports from witness interviews – to enable Beach to prepare a defense and avoid surprise. *United States v. Beebe*, 792 F.2d 1363, 1367 (5th Cir. 1986) (because indictment was sufficient, district court did not abuse discretion in denying motion for bill of particulars).

For all the reasons provided above, the Court **denies** Defendant Beach's Motion to Dismiss [105] the indictment.

SO ORDERED AND ADJUDGED this 10th day of December, 2018.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE
